UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN CLEVELAND, as an individual,<br><br>Plaintiff,<br><br>v.<br><br>GROCERYWORKS.COM, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.  14-cv-00231-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 71 |

## I.   INTRODUCTION

This case is before the Court on a motion for partial summary judgment by Defendant Groceryworks.com, LLC d/b/a Safeway.com and Vons.com ("Groceryworks") as to claims by Plaintiff Darren Cleveland that Groceryworks violated the California Labor Code and the California Unfair Competition Law (the "UCL"), and his request for punitive damages under both statutes.  Originally brought in state court as a putative class action on December 17, 2013, the case was the removed to federal court on January 15, 2014.  For the reasons discussed below, Groceryworks's Motion is DENIED as to Claims 2 (a claim for failure to provide meal breaks) and 6 (a claim under the UCL) and GRANTED as to all others at issue.  Cleveland may also proceed on Claims 7 and 8, which are not at issue in the present Motion.[1]

## II.   BACKGROUND

### A.   Factual Background

Groceryworks is an online shopping and delivery service.  Customers place their grocery orders online, Safeway and Vons grocery store employees collect and package the groceries, and

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court<br>Northern District of California

1  Groceryworks's drivers deliver the groceries to customers.  Henry Decl. (dkt. 79) ¶ 2.

2  Groceryworks hired Cleveland as a part time driver on April 8, 2008, with a base salary of $14.00

3  per hour.  *Id*. at ¶ 3.  Cleveland requested a promotion to full time status in September 2013, which

4  was granted on October 20, 2013 based on Groceryworks's business needs, and was paid at the

5  increased rate of $17.67 per hour.  *Id*. at ¶ 5.

6      During the course of his employment at Groceryworks, Cleveland worked at several stores,

7  but primarily worked within the NorCal 3 operations area.  Ilg Decl. (dkt. 85) Ex. A (Cleveland

8  Dep.) 13:22–15:15.  Within NorCal 3, he spent the majority of his time working out of Safeway

9  store 2708 in Alameda, California.  *Id*.  When Cleveland first joined Groceryworks, Yvette

10  Gutierrez was the operations manager overseeing NorCal 3.  *Id*. at 22:01–04.  She was succeeded

11  by Tonya Webster, who became NorCal 3 operations manager approximately one year after

12  Cleveland joined the company, in August 2009.  *Id*. at 21:22–22:15.  The operations manager

13  position is responsible for overseeing delivery goals, budgets, hiring, firing, training, performance

14  management, and analyzing store delivery metrics, including sales.  Barnes Decl. (dkt. 81) ¶ 2.

15  While Cleveland was employed at Groceryworks, the operations manager was Cleveland's

16  supervisor.  Cleveland Dep. 21:22–22:15.

17      Cleveland was terminated on December 5, 2013, purportedly because Groceryworks

18  determined that he used profanity with a manager regarding Groceryworks's human resources

19  website, and that he was dishonest during its investigation of the profane email, which Cleveland

20  maintains that he did not write.  Henry Decl. ¶ 6; Ilg Decl. Ex. A (Henry Dep.) 33:04–06;

21  Cleveland Dep. 158:15–159:06, 259:07–15.  Cleveland believes that his termination was in fact

22  due to Groceryworks's desire to withhold full time employment benefits from him once he

23  expressed his desire to become a full time employee.  *Id*. at 161:24–165:03, 259:22–25.

24      **1.   Groceryworks Scheduling**

25      Groceryworks drivers are assigned to either a morning shift, an afternoon shift, or both, by

26  their operations manager.  Cleveland Dep. 22:24–23:04.  Morning shifts generally run from 10:00

27  A.M. until 3:00 P.M.  *Id*. at 26:05–11, 28:02–04.  Afternoon shifts generally run from 4:00 P.M.

28  until 9:00 P.M.  *Id*. at 28:05–09.  There is an hour gap between the end of the morning shift and

United States District Court
Northern District of California

the beginning of the afternoon shift, in which drivers are to return to the store, eat their lunch, and prepare for the upcoming shift if they have one. *Id*. at 37:17–37:24, 38:10–38:21; Barnes Decl. ¶ 12.

Groceryworks uses Descartes Route Planner ("Descartes") software to plan delivery routes. Barnes Decl. ¶ 8. Based on customers' order details and addresses, Descartes generates a daily "driver route report" which specifies the time the driver should depart from the store in order to timely fulfill the orders.[2] *Id*. Suggested departure times are communicated to the driver before the start of their shifts so that they know what time to arrive at the store to begin their shift. *Id*. Upon arrival at the store, drivers receive a "delivery manifest," generated by Descartes, that details the most efficient delivery order based on customer addresses. *Id*. at ¶ 9; Cleveland Dep. 47:12–18. Delivery manifests changed on a daily basis because customer orders varied from day to day. Cleveland Dep. 31:16–25.

Cleveland's operations manager, Tonya Webster, used both automated and manual timekeeping systems to monitor drivers' compliance with Groceryworks's meal, rest, and timekeeping policies. Henry Decl. ¶ 16. Manual and automated time entries are recorded into Groceryworks's electronic timekeeping system called "Oasis." *Id*. Drivers work in the field without supervision, but as a general practice, are expected to return to their assigned store at the end of the morning shift, clock out of Oasis, take lunch, then clock back in on Oasis to begin their afternoon shift if they are scheduled for one. *Id*. at ¶ 17. If drivers are not able to return to the store for lunch, for reasons such as delays in the projected delivery schedule, drivers are told to take an off-duty "on-the-road" lunch. *Id*. at ¶ 18. Drivers who take on-the-road lunches are required to call either their assigned operations manager or the operations manager in charge from the road to report the time the lunch break started and ended. *Id*.; Cleveland Dep. 135:20–136:04.

---

[2] Descartes is configured to allow extra time to complete routes based on "road speed factors," including traffic patterns and peak congestion hours, and "service time factors," including whether a driver will have to take multiple trips from the van to the customer's door. Barnes Decl. ¶ 10. Descartes is also configured to allow at least a thirty minute meal period before the end of the fifth hour of work and fifteen minute rest periods, in an effort to ensure that drivers can complete their routes with adequate time for their statutorily-mandated meal and rest periods. *Id*. at 11–12.

United States District Court
Northern District of California

These times are manually recorded by the operations manager into either a "Daily Tracker Report" or an "Automated Payroll Entry," which are then entered into Oasis by the operations manager prior to the close of the payroll period. Henry Decl. ¶ 18. During Cleveland's employment, Groceryworks's Payroll Department issued "Driver Punch Reports," which reflected each driver's time punches as well as whether these entries had already been manually modified in Oasis by their operations manager. *Id.* at ¶ 20.

Cleveland received multiple performance evaluations during his employment, based on several factors. Henry Decl. ¶ 4. One such factor was Cleveland's "drops per hour" ("DPH") quota. Cleveland Dep. 110:11–111:08; Henry Decl. ¶ 4 & Ex. A at D000056–59. Drivers were expected to make two DPH. Cleveland Dep. 110:19–25; Henry Decl. ¶ 4 & Ex. A at D000057. Cleveland testified that he received bad reviews for failing to make his DPH quota, which he attributes to delays beyond his control not taken into account by Groceryworks in calculating drivers' DPH.[3] Cleveland Dep. 120:21–23, 146:18–147:03. The two reviews criticizing Cleveland's DPH were authored by his first operations manager, Yvette Gutierrez.[4] Henry Decl. ¶ 4 & Ex. A at D000056–59. Groceryworks did not use DPH as a metric to evaluate Cleveland's performance in any review after Tonya Webster became NorCal 3 operations manager in August 2009. Henry Decl. ¶ 4.

### 2.  Groceryworks's Wage and Hour Policies

Groceryworks maintained formal policies concerning timekeeping and rest and meal breaks. Henry Decl. ¶¶ 9–15. Groceryworks communicated these policies to its drivers primarily through its Drivers Handbook. *Id.* at ¶ 10. Cleveland received this handbook, effective from 2005

---

[3] According to Cleveland, the DPH calculation did not take into account the time that Cleveland and other drivers waited for the orders to be completed before they could depart on their delivery routes. Cleveland Dep. 147:12–19, 169:15–170:10. For example, on a day where the driver needs to make seven deliveries, if the pickers take four hours to prepare the orders, the driver leaves the store four hours late, and even where he delivers all seven orders in the next three hours, his DPH is recorded at one drop per hour, not 2.33. *Id.*

[4] Cleveland testified that he was specifically told by Yvette Gutierrez that he would not be given hours unless he increased his DPH numbers, and testified that she did cut his hours for a short period due to this issue. Cleveland Dep. 173:01–08.

United States District Court
Northern District of California

to March 31, 2014, upon his hire in 2008. Cleveland Dep. 48:14–49:09. Cleveland also underwent training upon his hire during which Groceryworks's policies were explained. Henry Decl. ¶ 9; Cleveland Dep. 19:08–25.

### a. Timekeeping Policy against Off-the-Clock work

Groceryworks's Drivers Handbook specifies that it is the driver's responsibility to accurately record time worked and that failure to record time accurately could result in an incorrect or delayed paycheck and is considered a severe violation of company policy and wage and hour laws. Sohlgren Decl. (dkt. 76) Ex. A at D001739–40. Cleveland testified that he understood that company rules prohibited drivers from performing off-the-clock work. Cleveland Dep. 30:19–22. Cleveland also testified that he understood that it was important to accurately record his time, and was aware that failure to abide by the Groceryworks's timekeeping policy may lead to disciplinary action, including termination. *Id*. at 50:21–51:04.

Shifts, including the delivery route and the pre- and post-delivery tasks, were all scheduled to take six hours or less. *Id*. at 187:07–11. Cleveland, however, estimates that he spent fifty to sixty hours working off-the-clock during the span of his employment, in large part due to the need to complete various pre- and post-delivery tasks along with his scheduled route.[5] *Id*. at 226:07–16. Cleveland was never disciplined for falsifying time records, or for exceeding six hours in a shift. *Id*. at 144:23–25, 228:10–19.

### b. Meal and Rest Period Policy and Waivers

Groceryworks's Meal Period Policy requires that drivers take an unpaid meal period of at least thirty minutes, spanning up to one hour, no later than the completion of the fifth hour of work

---

[5] Cleveland testified that he needed to complete several tasks before departing on a route, including loading the trucks with the deliveries, running a vehicle inspection report, verifying refrigeration temperatures, processing returns, and checking on paperwork and receipts. Cleveland Dep. 30:23–31:12. Cleveland testified that there were times he arrived at the store early and completed these tasks prior to clocking in for his shift so that he could depart the store on time and avoid a write-up for going over his six hours. *Id*. at 224:25–226:16, 226:22–227:19. Upon returning to the store after completing his route, Cleveland testified that several tasks needed to be completed, including unloading his truck, turning in paperwork, and processing returns. *Id*. at 151:09–19, 152:17–24, 154:13–21. Cleveland testified that on occasions when he was running late to return to the store, he would return, clock out so as to not exceed his six hours, and then complete these post-delivery tasks off-the-clock. *Id*. at 151:09–19, 224:08–24.

United States District Court
Northern District of California

United States District Court
Northern District of California

unless they work no more than six hours and have signed a meal period waiver. Henry Decl. ¶¶ 11, 15 & Ex. D at D062505–06, Ex. H. Drivers working over ten hours a day are entitled to take a second meal period by the completion of their tenth hour of work unless they are to work no more than twelve hours, have signed a second meal period waiver, and take their first thirty minute meal period off-duty. Sohlgren Decl. Ex. A at D000033. Drivers were told that even when they are running behind their assigned schedule, they are still required to stop for lunch for at least thirty minutes to "rejuvenate" themselves and to take rest breaks consistent with Groceryworks's policies.[6] Henry Decl. ¶ 12 & Ex. E at D003422; Barnes Decl. ¶ 18; Cleveland Dep. 129:13–24.

Besides the six and ten hour meal period waivers, which Cleveland received and signed upon his hire, Groceryworks provided Cleveland and other drivers with an on-duty meal period agreement. Cleveland Dep. 100:08–19, 103:13–23, 104:13–24. The on-duty meal period agreement states that employees are provided with a thirty minute meal period for every five hours of work except when the nature of the work prevents an employee from being relieved of all duty, such as in rare circumstances like a truck breakdown, where Groceryworks and the driver may mutually consent to waive the off-duty meal period and agree that the driver will instead be compensated for having to take their lunch on-duty. Cleveland Dep. 100:08–19; Henry Decl. ¶ 20. The Driver Punch Reports, Daily Tracker Reports, and Automated Payroll Entry Reports reflect these on duty meal periods as a paid missed meal break. Henry Decl. ¶ 20.

Groceryworks's Rest Period Policy authorizes drivers to take a paid fifteen minute rest period for every four hours of work. Henry Decl. Ex. C at D001720, Ex. D at D062506. Drivers are told to take their first rest period prior to lunch, and their second rest period after lunch. *Id.* ¶ 10 & Ex. C at D001720. Drivers working an excess of ten hours a day are authorized to take a third ten minute rest period. *Id.* ¶ 11 & Ex. D at D062606. Rest periods are to be taken in the

---

[6] Management was aware that drivers might experience delays in departing on their routes. Tonya Webster sent a March 31, 2011 email to drivers, including Cleveland, that they were to call or text her if they ran into issues causing them to leave the store later than the scheduled departure time. Cleveland Dep. 41:17–42:06.

1    middle of each work period where practicable.  *Id.*  Similar to Groceryworks's policy on meal

2    breaks, drivers were told to manage their own schedules and routes to ensure that they took rest

3    breaks in compliance with company policy, even if it meant that routes were late.  Barnes Decl.

4    ¶ 15 & Ex. C at Cleveland-001576; Cleveland Dep. 113:21–25.

5         Besides the Drivers Handbook, Groceryworks also communicated its meal and rest break

6    policy to Cleveland and other employees on several later occasions.  In May 2008, Groceryworks

7    circulated a document titled "Frequently Asked Questions Regarding Safeway's Meal & Rest

8    Period Policy" to all its drivers, including Cleveland, and posted it in common areas around stores

9    in California, including store 2708.  Henry Decl. ¶ 12 & Ex. E.  On May 19, 2008, a "Reminder re:

10   Meal and Rest Periods for Safeway.com California Drivers" was distributed to all drivers

11   including Cleveland.  *Id.* at ¶ 11 & Ex. D.  A meal period policy reminder was distributed to

12   Cleveland and other drivers on June 3, 2011, July 7, 2011, October 19, 2009, November 10, 2011,

13   and on July 18, 2012, and May 8, 2013, Cleveland and other drivers received another meal and

14   rest break policy reminder.  Barnes Decl. ¶ 7 & Ex. B; Henry Decl. ¶¶ 13–15 & Exs. F–H.

15   Further, Tonya Webster discussed these policies at drivers' meetings, which Cleveland attended.

16   Barnes Decl. ¶ 6 & Ex. A.

17        Cleveland never received a write-up for a lunch or rest break violation.  Cleveland Dep.

18   124:25–125:10, 182:24–183:01.

19        **B.    Procedural History**

20        On December 13, 2013, Darren Cleveland brought suit in the California Superior Court,

21   Alameda County, as a putative class action against his former employer Groceryworks alleging

22   violations of the California Labor Code (Claims 1–5), the UCL (Claim 6), and the federal

23   Employment Retirement Income Security Act ("ERISA") (Claims 7–8).  *See generally* Notice of

24   Removal (dkt. 1) Ex. A (Compl.).  Groceryworks answered Cleveland's Complaint on January 10,

25   2014.  *See* Notice of Removal Ex. C (Answer).  Groceryworks timely removed the case to federal

26   court on January 15, 2014 on federal question grounds.  *See generally* Notice of Removal.

27        After multiple mediation sessions, Cleveland moved for preliminary approval of a class

28   settlement on September 30, 2015, attaching a proposed settlement agreed to by both parties.

United States District Court
Northern District of California

7

1    First Motion for Preliminary Approval (dkt. 59) & Ex. 1.  At a hearing on November 30, 2015, the

2    Court identified several defects in Cleveland's Motion for Preliminary Approval.  Minute Order

3    (dkt. 62).  After Cleveland submitted supplemental materials that failed to ameliorate all of the

4    Court's concerns, the Court denied without prejudice Cleveland's First Motion for Preliminary

5    Approval on December 16, 2015.  Order (dkt. 65).  Cleveland did not file a renewed motion for

6    preliminary approval within the deadline to do so, instead electing to proceed on his individual

7    claims.

8            Groceryworks filed its instant Motion for Partial Summary Judgment on April 6, 2016.

9    *See* Mot. (dkt. 71).  Groceryworks moves for summary judgment on the following claims: Claim

10   1, that Groceryworks failed to compensate Cleveland for all hours worked in violation of

11   California Labor Code sections 200, 226, 500, 510, 1197, and 1198; Claim 2, that Groceryworks

12   failed to provide Cleveland with meal and rest breaks, as required by California Labor Code

13   sections 226.7 and 512; Claim 3, that Groceryworks failed to furnish Cleveland with accurate

14   wage statements pursuant to California Labor Code section 226(e) and 226.3; Claim 4, that

15   Groceryworks failed to maintain accurate employee time records in violation of California Labor

16   Code section 1174; Claim 5, that Groceryworks failed to timely pay Cleveland his final paycheck,

17   as required under California Labor Code sections 201 through 203; and Claim 6, that

18   Groceryworks's violations of federal employment laws and state wage and hour laws constitute a

19   violation of the California UCL.  Mot. at 2–3.  Groceryworks also moves for summary judgment

20   on Cleveland's prayer for punitive damages.  *Id.*  Groceryworks has not moved for summary

21   judgment as to Cleveland's seventh and eighth claims, arising under ERISA.

22          C.     **Arguments on Motion for Summary Judgment**

23                 1.  **Groceryworks's Motion**

24          In its Motion, Groceryworks argues that it is entitled to summary judgment on Cleveland's

25   California Labor Code claims for the following reasons.  *See generally* Mot.  First, as to Claim 1,

26   Groceryworks argues that Cleveland has submitted no evidence that he worked off-the-clock or

27   that Groceryworks had actual or constructive knowledge of his off-the-clock work.  Mot. at 7–10.

28   Alternatively, Groceryworks argues that Cleveland is estopped from seeking compensation for

United States District Court
Northern District of California

8

United States District Court
Northern District of California

unreported hours where Cleveland was responsible for submitting false time records to Groceryworks. *Id*. at 10.  As to Claim 2, Groceryworks argues that Cleveland has submitted no evidence that it failed to provide him with meal and rest breaks. *Id*. at 11–16.  As to Claim 3, Groceryworks contends not only that this claim for failure to furnish accurate wage statements is derivative of Cleveland's other wage and hour claims, which it maintains should fail, but also that Cleveland has submitted no evidence that Groceryworks knowingly and intentionally provided him with nonconforming statements. *Id*. at 16.  Alternatively, to the extent that Cleveland's claim is based on the nonpayment of meal and rest period premiums, Groceryworks argues that a plaintiff cannot assert an inaccurate wage statement claim on the basis of these premiums. *Id*. at 16–17.  As to Claim 4, Groceryworks argues not only that this claim is derivative of Cleveland's other wage and hour claims, but also that California Labor Code section 1174 does not establish a private right of action for failure to maintain accurate time records. *Id*. at 17–18.  As to Claim 5, Groceryworks argues that not only is this claim derivative of Cleveland's other wage and hour claims, but also that Cleveland has submitted no evidence that Groceryworks willfully failed to pay him all final wages due. *Id.* at 18.  Further, Groceryworks argues that California law prevents Cleveland from seeking waiting time penalties to the extent that he does so on the basis of nonpayment of missed meal and rest period premiums. *Id*. at 18–19.

Groceryworks argues that it is entitled to summary judgment on Claim 6, Cleveland's UCL claim, because it claims that Cleveland cannot prevail under the UCL unless he can show that he is entitled to either an injunction or restitution, which Groceryworks argues that Cleveland cannot do. *Id*. at 19–22.  Groceryworks also argues that Cleveland's claim for punitive damages is barred because neither the Labor Code nor the UCL make punitive damages available. *Id*. at 22.

In support of its Motion, Groceryworks submits the declaration of its attorney Eric Sohlgren, attaching excerpts of Cleveland's July 2, 2014 deposition and a December 16, 2008 declaration by Cleveland used in prior litigation, and declarations by Judi Henry, Groceryworks's Human Resources Representative, and Charles Barnes, a Groceryworks operations manager, addressing Cleveland's employment history and Groceryworks's policies and procedures. *See generally* Sohlgren Decl. Exs. A–B; Henry Decl.; Barnes Decl.  The Henry and Barnes

declarations attach several exhibits: Cleveland's performance evaluations, Cleveland's application for full time status, Groceryworks's Driver Handbook, email reminders of Groceryworks's meal and rest breaks policies, and agendas for drivers' meetings. Henry Decl. Exs. A–H; Barnes Decl. Exs. A–D.

### 2. Cleveland's Opposition

In his Opposition, Cleveland asserts that he has presented sufficient evidence to defeat summary judgment. *See generally* Opp'n (dkt. 83). As to Claim 1, Cleveland argues that there is sufficient evidence that he worked off-the-clock, and that Groceryworks had knowledge of this fact. *Id.* at 2–3. As to Claim 2, Cleveland argues that he has presented sufficient evidence that Groceryworks, through its policies and procedures, constructively prevented or discouraged him from taking his meal and rest periods by requiring him to maintain a DPH quota. *Id.* at 5–8. As to both Claims 3 and 5, Cleveland argues that Groceryworks has mischaracterized the law as to his waiting time penalty and failure to timely pay a final paycheck claims, and that an employer's nonpayment of meal and rest break premiums can trigger liability under both Labor Code provisions. *Id.* at 8–12. As to Claim 4, Cleveland states that California Labor Code section 1174 does create a private action, and that because Cleveland has presented "a wealth of evidence . . . that he is entitled to unpaid wages," he may also assert a claim under section 1174 for Groceryworks's purported failure to keep accurate records of Cleveland's hours worked. *Id.* at 8. As to Claim 6, Cleveland argues that he can maintain a claim under the UCL so long as the business practice is unfair, which he contends it is in this case, and that his UCL claims should not be dismissed because they are also predicated on Cleveland's ERISA claims, not challenged by Groceryworks in its present Motion. Opp'n at 12. Cleveland does not respond to Groceryworks's argument regarding punitive damages.

Cleveland's Opposition is supported by his own April 20, 2016 declaration and the declaration of his counsel, Stephen Ilg. The Ilg declaration attaches several exhibits: Cleveland's full deposition testimony, the depositions of Tonya Webster and Judi Henry, and declarations made by two of Groceryworks's drivers, John Green and Basheer Robinson, describing Groceryworks's policies and procedures. Ilg Decl. Exs. A–D.

### 3. Groceryworks's Reply

Groceryworks's Reply argues that, as to Claim 1, Cleveland has submitted no evidence besides his own "rank speculation" that Groceryworks knew or should have known about his off-the-clock work, and that Cleveland failed to address Groceryworks's argument that he is estopped from seeking compensation on this claim due to Cleveland's falsification of time records.  Reply (dkt. 88) at 1–3.  As to Claim 2, Groceryworks reasserts that Groceryworks did not interfere with Cleveland's ability to take his rest and meal breaks, and argues that Cleveland's subjective opinion that his workload was too heavy cannot defeat summary judgment.  *Id*. at 3–6.  Third, as to Claim 3, Groceryworks reasserts that Cleveland has put forth no evidence that Groceryworks knowingly and intentionally failed to provide Cleveland with accurate wage statements, and further reasserts that the nonpayment of premiums cannot serve as a predicate basis for wage statement liability under California law.  *Id*. at 7–8.  Fourth, Groceryworks maintains that California Labor Code section 1774 does not provide a private right of action, barring Cleveland's Claim 4 as a matter of law.  *Id*. at 9.  As to Claim 5, Groceryworks reasserts that waiting time penalties are not available to Cleveland as a matter of law to the extent that they are based on the nonpayment of meal and rest premiums, and further contends that Cleveland has submitted no evidence that Groceryworks willfully failed to pay these penalties.  *Id*. at 9–10.  As to Claim 6, Groceryworks reasserts that Cleveland's UCL claims should be dismissed since they are derivative of his statutory claims which Groceryworks argues should fail.  *Id*. at 10.  Groceryworks does not address Cleveland's argument that his UCL claim should stand to the extent that it is based on his unchallenged ERISA claims.

### 4. Evidentiary Objections

Groceryworks also filed an objection to several of Cleveland's statements in his April 20, 2016 declaration, which are discussed in context below.  *See generally* Groceryworks's Amended Objections to Plaintiff's Evidence (dkt. 91) ("Obj.").  First, Groceryworks objects to Cleveland's statements in his Declaration regarding Groceryworks's knowledge or awareness that he was missing meal and rest breaks and working off-the-clock on the grounds that (1) Cleveland did not lay a foundation or show how he has personal knowledge of what the company "knew" per

United States District Court
Northern District of California

11

Federal Rule of Evidence 602, and (2) the statements in his declaration contradict his previous sworn deposition testimony.  *See* Obj. at 1–4.  Groceryworks also objects to Cleveland's testimony about the operation and functioning of his refrigerated delivery truck on the grounds that has not established himself an expert in refrigerated trucks pursuant to Federal Rules of Evidence 602 and 701.  *Id*. at 4.  Lastly, Groceryworks objects to the declarations of Basheer Robinson and John Green, other Groceryworks employees, because it claims that neither have any probative value nor are they relevant to whether Cleveland was denied his breaks or wages per Federal Rules of Evidence 401, 402, 403.  *Id*. at 5.  To the extent that the challenged evidence is relevant to the Court's analysis, this Order addresses Groceryworks's objections in context below.

## III.    ANALYSIS

### A.    Legal Standard

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial."  *Id*.  "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996).  Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Id*. at 1229; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

The evidence presented by both parties must be admissible.  Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine

12

1    issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d

2    730, 738 (9th Cir. 1979). Hearsay statements in affidavits are inadmissible. *Japan Telecom, Inc.*

3    *v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 n.1 (9th Cir. 2002). On summary judgment, the

4    court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S.

5    372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based

6    on the record as a whole, there is no "genuine issue for trial" and summary judgment is

7    appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In

8    considering Groceryworks's Motion, therefore, the Court draws all reasonable inferences in favor

9    of Cleveland.

10        **B.    Released Claims**

11        The Court notes that neither party's briefs address the release obtained in a previous class

12   action against Groceryworks. In support of its argument that it did not prevent Cleveland from

13   taking meal and rest breaks, Groceryworks submits Cleveland's December 16, 2008 declaration,

14   which is notable in its contradictions to Cleveland's deposition testimony and more recent April

15   20, 2016 declaration, as it pertains to any claims arising out of his time working at Groceryworks

16   prior to December 16, 2008. *See* Mot. at 12; Sohlgren Decl. (dkt. 78) Ex. B (2008 Cleveland

17   Decl.); *cf.* Cleveland Dep.; Cleveland Decl. (dkt. 84). The 2008 declaration was obtained

18   voluntarily by Groceryworks's counsel as part of a class action suit brought against Groceryworks,

19   in which Cleveland was a class member. Sohlgren Decl. ¶ 3 & Ex. B. That case was settled on

20   July 22, 2010. Order Approving Final Settlement, *Jason Marlow v. Von's Grocery Co., et al.*,

21   Case No. BC388354 (L.A. Super. Ct., July 22, 2010) ("Order"). Although no party raised the

22   issue in this action, as part of the settlement, in exchange for a settlement check, plaintiffs and

23   members of the plaintiff class agreed to release Groceryworks from all claims and causes of action

24   under California Labor Code sections 201, 201.5, 202, 202.5, 203, 212, 216, 218.6, 226, 226.7,

25   510, 512, 516, 558, 1174, 1175, 1194, 1199, and 2689 *et seq.*; the applicable portions of California

26   Industrial Welfare Commission Wage Orders; California Business and Professions Code section

27   17200 *et seq.*; and 29 U.S.C. § 211(c) (the "released claims"). *Id.* at 4–5. Groceryworks did not

28   agree to admit any fault as part of the settlement. *Id.* at 5–6. Because Cleveland's claims being

United States District Court
Northern District of California

challenged in this present motion arise under the California Labor Code, California IWC Wage

Orders, and California Business and Professions Code sections included in the aforementioned

released claims, the Court finds, and Cleveland's counsel conceded at the hearing, that Cleveland

has released those claims against Groceryworks insofar as they arose prior to the settlement date

of July 22, 2010.  Accordingly, Groceryworks's conduct prior to that date is not relevant—the

issue before the Court is whether Cleveland has identified evidence of violations *after* the previous

settlement.

C.      **California Wage-and-Hour Law Violations**

1.      **Failure to Compensate for Off-the-Clock Work**

a.   Overview

California law requires that an employer pay for all hours that it "engage[s], suffer[s], or

permit[s]" an employee to work.  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (2000).

This definition is equivalent to the Fair Labor Standards Act obligation to pay for work the

employer "knows or has reason to believe" the employee performs.  *Id*. at 585 (quoting 29 C.F.R.

§ 785.11 (1998)).  Thus, a plaintiff may establish that an employer is liable for unpaid wages if it

"knew or should have known off-the-clock work was occurring." *Brinker Rest. Corp. v. Super.

Ct.*, 53 Cal. 4th 1104, 1051–52 (2012).  While an employer's actual or constructive knowledge of

the hours its employees work is an issue of fact, the court on summary judgment must determine

whether evidence has been presented that would support a finding of such knowledge.  *Jong v.

Kaiser Health Found., Inc.*, 226 Cal. App. 4th 391, 399 (2014).  Testimony that is conclusory or

speculative in nature that is presented in the moving papers is insufficient to create a genuine issue

of material fact.  *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083–85 (N.D. Cal. 2007)

(granting summary judgment against an employee who failed to submit evidence above pure

conjecture that his employer had actual or constructive knowledge of the employee's work).

California courts recognize a presumption that employees are doing no work while clocked out,

which employees have the burden to rebut.  *Brinker*, 53 Cal. 4th at 1051.

There is no dispute that Cleveland was aware of Groceryworks's policy prohibiting

employees from performing off-the-clock work.  Cleveland Dep. 30:19–22.  Cleveland

1    acknowledged that he understood Groceryworks's timekeeping policy, which specifies that drivers

2    are responsible for accurately recording time worked and that failure to do so is considered a

3    violation of company policy which could result in discipline, up to termination.  *Id*. at 50:21–

4    51:04.  Cleveland admitted that no one at Groceryworks ever asked him to work off-the-clock.

5    Cleveland Dep. 154:22–24, 174:01–12, 227:20–22, 231:13–19.  Cleveland also admitted that he

6    never complained to anyone at Groceryworks about having to work off-the-clock.  *Id*. at 231:20–

7    22.  Further, Cleveland admitted at multiple points in his deposition that Groceryworks had no

8    knowledge of this off-the-clock work, or at least that he lacks knowledge as to whether

9    Groceryworks was aware of such work.  *Id*. at 145:11–15, 154:22–155:02, 225:11–21.  Indeed,

10   Cleveland admits to actively misreporting his time.  *Id*. at 145:01–05, 206:23–207:09.

11   Cleveland's own deposition testimony demonstrates that Cleveland failed to inform others of his

12   off-the-clock work, and there is no other evidence that Groceryworks had actual knowledge of

13   Cleveland's off-the-clock work.

14          In support of his claims and in opposition to Groceryworks's Motion, Cleveland contends

15   instead that "[Cleveland] has sufficient evidence that he was forced to work off the clock and that

16   [Groceryworks] knew or should have known that he was working off the clock."  Opp'n at 3–4

17   (citing Cleveland Decl. ¶¶ 3–7).  Specifically, Groceryworks had reason to believe Cleveland was

18   working unreported hours based on Cleveland's own testimony that: (1) supervisors saw him

19   working outside his scheduled hours; (2) he complained to his supervisor that he was running late

20   on his shifts; and (3) Groceryworks's own policies and procedures, namely its DPH requirement,

21   made it impossible for him to complete his tasks within his allotted six hours per shift.  Opp'n at

22   3–5.  As discussed below, however, Cleveland fails to submit evidence in support of these

23   allegations sufficient to support an inference that Groceryworks had constructive knowledge of his

24   off-the-clock work, as Cleveland has the burden to prove at trial.

25                b.  Evidentiary Objections Regarding Off-the-Clock Work

26          As a preliminary matter, Groceryworks objects to statements in Cleveland's declaration

27

28

about what Groceryworks "knew" on two grounds.[7]  *See generally* Obj.  First, Groceryworks

objects to these statements on the grounds that Cleveland has failed to demonstrate personal

knowledge of what the company "knew," in violation of Federal Rule of Evidence 602.  *Id.*

Second, Groceryworks objects because it claims that Cleveland's declaration directly contradicts

sworn statements made in his deposition, and therefore the contradictory declaration statements

should be stricken under the sham affidavit rule.  *Id.*

As for the first objection, the Court agrees that Cleveland's statements as to Grocerywork's

corporate knowledge are inadmissible to the extent that he has failed to demonstrate personal

knowledge of what the company knew.  Federal Rule of Evidence 602 states, "[a] witness may

testify to a matter only if evidence is introduced sufficient to support a finding that the witness has

personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the

witness's own testimony."  Fed. R. Evid. 602.  The testimony of a witness concerning a particular

matter is inadmissible unless he has personal knowledge of the matter.  *Bozzi v. Nordstrom, Inc.*,

186 Cal. App. 4th 755, 761 (2010).

In the context of summary judgment, courts are limited to relying only on competent and

admissible evidence.  *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th

Cir. 1980).  Whether an affidavit opposing summary judgment is admissible is determined by

Federal Rule of Civil Procedure 56, which provides that affidavits "must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Courts are to

liberally construe the affidavits of the non-moving party on a motion for summary judgment.  *See*

---

[7] In its Objections, Groceryworks only objects to statements made by Cleveland in his declaration
testifying to what Groceryworks "knew," not in his deposition.  *See generally* Obj.  In his
Opposition, however, Cleveland cites his declaration only once: "Plaintiff has sufficient evidence
that he was forced to work off the clock and that Defendant knew or should have known that he
was working off the clock.  There were myriad reasons Defendant knew.  *See* Declaration of
Darren Cleveland filed concurrently herewith, ¶¶ 3–7."  Opp'n at 3.  The remainder of Cleveland's
Opposition relies solely on deposition testimony as evidence of his claims.  *See generally* Opp'n.
However, because deposition testimony must also reflect the personal knowledge of the deponent,
Fed. R. Evid. 602, the Court construes Groceryworks's personal knowledge objection as an
objection to such testimony in both Cleveland's declaration and his deposition.

United States District Court
Northern District of California

*Snider v. Snider*, 200 Cal. App. 2d 741, 751 (2000).  However, "[t]he rule of liberal construction should not be applied to the affidavits in opposition to the motion, in such a way as to defeat the very purpose of the procedure."  *Id.*  Accordingly, although courts are to liberally construe the opposing party's declarations, plaintiffs still must adhere to the rules of evidence and establish each witness's competence and personal knowledge.  *Id.*

Personal knowledge means a present recollection of an impression derived from the exercise of the witness's own senses.  *Alvarez v. California*, 79 Cal. App. 4th 720, 731 (1999), *overruled on other grounds by Cornette v. Dep't of Transp.*, 26 Cal. 4th 63 (2001).  Personal knowledge may include inferences and opinions; however, those inferences must be substantiated by specific facts, "grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

An affiant's personal knowledge and competence to testify are often inferable from the facts stated in the affidavit.  *See, e.g.*, *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (concluding that a union council chairman's personal knowledge of various council activities could be presumed).  An affidavit must include sufficient facts clearly within the affiant's personal knowledge to permit this inference.  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (statements of "mere belief" must be disregarded).  Where there is insufficient factual matter to support such an inference, the affidavit in its entirety, or portions not reflecting the affiant's personal knowledge, will be stricken if challenged.  *See id.*

Cleveland recites in his declaration that he has personal knowledge of the matters stated therein.  Cleveland Decl. ¶ 2.  Cleveland does not, however, set forth facts that would establish his personal knowledge of what the company, by way of his supervisors or otherwise, "knew."  There is no evidence that Cleveland informed Groceryworks of his off-the-clock work or missed breaks, or that Cleveland's supervisors indicated to him any awareness on their part.  Further, unlike the council chairman in *Barthelemy*, personal knowledge of company awareness cannot be inferred based on Cleveland's position as a delivery driver.  Cleveland does not set forth facts indicating

17

1    that drivers were made aware of company knowledge through any means besides their own

2    personal communications with management, nor is it obvious that they would be.  Accordingly,

3    the Court strikes all portions of Cleveland's declaration and deposition testifying to what

4    Groceryworks knew or should have known and declines to consider those statements in resolving

5    Groceryworks's motion.[8]

6            Groceryworks also objects to Cleveland's Declaration testimony on the grounds that it

7    contradicts his prior sworn deposition statements.[9]  *See generally* Obj.  Contradictory declaration

8    statements are governed by the sham affidavit rule (also known in California as the *D'Amico* rule,

9    after *D'Amico v. Board of Medical Examiners*, 11 Cal. 3d 1 (1974)), establishing that "a party

10   cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."

11   *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Radobenko v. Automated*

12   *Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) ("When confronted with the question of whether

13   a party should be allowed to create his own issue of fact by an affidavit contradicting his prior

14   deposition testimony . . . [the purported issues of fact created by a plaintiff's contradictory

15   declaration] are sham issues which should not subject the defendants to the burden of a trial.").

16   The Ninth Circuit has explained that "if a party who has been examined at length on deposition

17   could raise an issue of fact simply by submitting an affidavit contradicting his own prior

18   testimony, this would greatly diminish the utility of summary judgment as a procedure for

19   screening out sham issues of fact."  *Kennedy*, 952 F.2d at 266.  This rule relates to sham testimony

20   that flatly contradicts earlier testimony.  *Id.*  Properly applied, the *D'Amico* rule is limited to

21   instances where "credible [discovery] admissions . . . . [are] contradicted *only* by self-serving

22   declarations of a party."  *Scalf v. D.B. Log Homes, Inc.*, 128 Cal. App. 4th. 1510, 1521 (2005)

23   (citations omitted) (emphasis added).  In a nutshell, the rule bars a party opposing summary

---

24

25   [8] The Court does not strike each paragraph in totality, merely statements attesting to what the
     Groceryworks knew or should have known.  For example, in paragraph 3 of Cleveland's
26   declaration, the Court strikes "[t]he company knew I worked off-the-clock," but declines to strike
     "[t]he biggest problem was the number of deliveries I was required to make."  Cleveland Decl.
27   ¶ 3.  Where applicable, the Court limits Cleveland's deposition testimony to the same effect.
     [9] As mentioned above, Cleveland's Opposition does not rely on his declaration except for one
28   brief mention that he also supports with a parallel citation to deposition testimony.  Opp'n at 3.

United States District Court
Northern District of California

1    judgment from filing a declaration that purports to impeach his or her own prior sworn testimony.

2    *Id.* at 1522.

3         The Ninth Circuit has cautioned that courts should not disavow a declaration as a sham for

4    minor contradictions resulting from honest mistake, newly discovered evidence, or credibly

5    refreshed recollection. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("'[T]he non-

6    moving party is not precluded from elaborating on, explaining or clarifying prior testimony

7    elicited by opposing counsel on deposition . . . .'" (quoting *Van Asdale v. Int'l Game Tech.*, 577

8    F.3d 989, 999 (9th Cir. 2009)). The Ninth Circuit in *Yeager* reiterated two important limitations

9    on the sham affidavit rule: (1) that the district court must make a "factual determination that the

10   contradiction was actually a sham"; and (2) that the "inconsistency between a party's deposition

11   testimony and subsequent affidavit must be clear and unambiguous." *Id.* Both determinations are

12   made on a case-by-case basis.

13        The *D'Amico* rule has not been accorded as broad an application as the related principle of

14   "judicial admission," which gives conclusive effect to the truth of a matter admitted. *Scalf*, 128

15   Cal. App. 4th at 1522 (citing *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 961

16   (1997)). For summary judgment purposes, deposition answers are simply evidence. *Id.* Subject

17   to the self-impeachment limitations set forth by *D'Amico*, they are considered and weighed in

18   conjunction with other evidence. *Id.* They do not constitute incontrovertible judicial admissions

19   in the same manner as, for example, concessions in a pleading or answers to requests for

20   admissions, which are specially designed to pare down disputed issues in a lawsuit. *Id.* While the

21   sham affidavit rule permits a trial court to disregard declarations by a party which contradict his or

22   her own discovery responses (absent a reasonable explanation for the discrepancy), it does not

23   countenance ignoring other credible evidence that contradicts or explains that party's answers or

24   otherwise demonstrates there are genuine issues of factual dispute.[10]

25   _____

26   [10] *See People ex rel. Dep't of Transp. v. Ad Way Signs, Inc.*, 14 Cal. App. 4th 187, 200 (1993)
     (declining to rely on an "admission" that a permit was cancelled that was elicited in response to a

27   compound request and was contradicted by other evidence); *Kirby v. Albert D. Seeno Constr. Co.*,
     11 Cal. App. 4th 1059, 1066–67 (1992) (holding summary judgment improper where an

28

1   Applying that standard here, the Court declines to rule that Cleveland's second declaration

2   is a sham that must be disregarded in its entirety.  The declaration was filed in opposition to the

3   summary judgment motion, and focuses on matters that Cleveland attests bear on whether

4   Groceryworks had actual or constructive knowledge that he was working off-the-clock and

5   through his breaks.  The only contradiction between the declaration and the deposition that the

6   Court has identified is the issue of whether his supervisors were aware that he was working off-

7   the-clock, but regardless of any conflict with prior testimony, as discussed above, Cleveland has

8   not demonstrated personal knowledge sufficient to testify on that issue.  Otherwise, none of the

9   statements he makes clearly and unambiguously contradict his deposition testimony, as is the

10   standard for a sham affidavit.  *See Yeager*, 693 F.3d at 1080.  Groceryworks points to small

11   deviations between Cleveland's deposition answers and his declaration, but the Court does not

12   interpret those minor inconsistencies as being so discordant as to rise to the level of a sham.[11]

13   Rather, these deviations can be reasonably construed as simply explaining testimony that

14   Cleveland felt was unclear in his deposition.

15

---

16   ambiguous "concession" in an unverified complaint was contradicted by credible explanation in a
    deposition); *Mason v. Marriage & Family Ctr.*, 228 Cal. App. 3d 537, 546 (1991) (holding that
17   review of the entire record indicated that the plaintiff's answer to an interrogatory was an honest
    mistake); WEGNER ET AL., CALIFORNIA PRACTICE GUIDE: CIVIL TRIALS AND EVIDENCE 8D–63,
18   ¶ 8:1245 (Rutter Group 2004) (stating that at trial, a party's deposition answers do not constitute
19   conclusive judicial admissions and may be contradicted by other evidence).

20   [11] For example, in his declaration, Cleveland states "many times I complained to supervisors and
    told them that I had too many deliveries to complete."  Cleveland Decl. ¶ 4.  In his deposition,
21   however, Cleveland testified that he complained to Yvette Gutierrez and Tonya Webster that he
    was unable to take his meal breaks and that he only complained to Tonya Webster about
22   difficulties taking his rest breaks.  Cleveland Dep. 174:13–175:09, 177:07–178:06, 222:15–18.
    However, Cleveland also testified in his deposition that he complained to both on multiple
23   occasions, and that he told them the reason he was unable to take his meal breaks was because,
    *inter alia*, he was leaving the store late.  *Id*. at 174:16–176:02, 221:07–23.  Liberally construing
24   Cleveland's declaration, the Court views his statement therein as a clarification to his deposition
    answer, since his declaration testimony does not preclude the possibility that he may have also
25   mentioned his deliveries to his operations managers as part of his complaints.  *See, e.g.*, *Winding
    v. Allstate Ins. Co.*, No. 2:09-CV-03526-KJM, 2011 WL 5241274, at *8 (E.D. Cal. Nov. 1, 2011)
26   ("Although plaintiff's deposition testimony is equivocal and might ultimately be used at trial to
    undermine plaintiff's credibility, none of the excerpts of his deposition testimony cited by Allstate
27   clearly and unambiguously contradicts the later-filed declaration.").

28

20

c.   Groceryworks Is Entitled to Summary Judgment on Cleveland's Off-the-Clock Work Claim

Setting aside Cleveland's unfounded assertions of Groceryworks's knowledge discussed above, the Court finds that there is insufficient evidence from which a rational jury could find that Groceryworks knew or should have known that Cleveland was working off-the-clock.

Cleveland's first argument, that Groceryworks either knew or should have known that he was working off-the-clock because supervisors and store pickers could see him working when he was not scheduled to work, is unpersuasive. *See* Opp'n at 4; Cleveland Decl. ¶¶ 3, 7; Cleveland Dep. 225:11–17.  Judge Walker addressed a similar argument in *White*, and held that the simple knowledge by supervisors that the plaintiff was in the store during any given time was insufficient to put the defendant on notice that he was working off-the-clock during that time. *White*, 497 F. Supp. 2d at 1084; *see also Jong*, 226 Cal. App. 4th at 398–99 (citing *White*, holding that evidence that an employee disarmed an alarm before his shift began and rearmed it after his shift ended was insufficient to establish that the employer knew or should have known the employee was working outside his shift).  The logic of *White* applies here.  Cleveland's testimony that Tonya Webster at one point saw him working prior to his shift is meaningless without further evidence that she knew Cleveland's shift schedule offhand and that she knew he had not already clocked in prior to beginning work. *See* Cleveland Decl. ¶ 7.  That Safeway store pickers saw Cleveland work prior to his scheduled shift is an even more distant leap in imputing knowledge to Groceryworks, because to do so would require evidence not only that these store pickers knew Cleveland's shift schedule, but also informed Groceryworks management that he was working later or earlier than his scheduled shift.  Cleveland Dep. 225:11–17.  Cleveland has not cited any such evidence, nor has the Court identified any in the record.

Second, Cleveland argues that because he complained to his supervisors that he had too many deliveries to complete, supervisors should have known he was working off-the-clock because "they saw that all of [his] tasks were completed" nonetheless.  Opp'n at 4; Cleveland Decl. ¶ 4.  The Court disagrees with Cleveland's argument that, "[a]s a result of [delays], Cleveland needed to work after clocking out to complete his post-delivery tasks," Opp'n at 4, because Cleveland has submitted insufficient evidence of "need."  Policies were in place that

21

allowed Groceryworks to adjust time sheets to account for any on the road lunches, on-duty meal periods, and other unaccounted for time worked.  *See generally* Barnes Decl.; Henry Decl. Further, Cleveland admitted that he would have been paid for his alleged off-the-clock work had Groceryworks known he was working over his allotted shift.  Cleveland Dep. 152:09–15, 228:06–19.

Courts have addressed similar arguments in *White*, 497 F. Supp. 2d at 1083–84, and in *Koike v. Starbucks Corp.*, No. C-06-3215-VRW, 2008 WL 7796650, at *4–5 (N.D. Cal. June 20, 2008).  In *White*, the plaintiff, bringing a claim for off-the-clock work, conceded that he never told his supervisor that he was working off-the-clock, but instead attempted to prove constructive knowledge by arguing that because his managers knew the hours it took to perform certain tasks, Starbucks knew or should have known that he needed to work off-the-clock to satisfy his job duties.  *White*, 497 F. Supp. 2d at 1083–84.  The court held, however, that while employers may have generally been aware that employees may have needed to work overtime, that was insufficient to impute knowledge that the employer was aware that White himself worked off-the-clock.  *Id*. at 1084.  In *Koike*, the plaintiff argued that despite Starbucks's official policy against overtime, and that he was always paid for his reported overtime, Starbucks should have known about his off-the-clock work because he had told his manager that it was impossible to complete his work in the allotted time and therefore his manager must have known he worked off-the-clock because he could see that plaintiff had completed his work.  *Koike*, 2008 WL 7796650, at *4–5. The court ruled, however, that the plaintiff's testimony was too speculative to impute actual or constructive knowledge to his employer sufficient to defeat summary judgment as the plaintiff had presented no evidence to show how his managers could determine whether his work had been done on- or off-the-clock.  *Id*.

In support of his argument, Cleveland cites an instance where Cleveland told Tonya Webster that he was running late on a shift, to which Tonya Webster responded that he needed to return to the store within six hours.  Opp'n at 4, Cleveland Dep. 152:09–153:22.  Based on the same reasoning employed by the courts in *White* and *Koike*, the Court disagrees that this is sufficient evidence from which to infer that Groceryworks knew or should have known that he

22

was completing tasks off-the-clock. Cleveland may have needed to complete tasks which would have caused him to exceed six hours per shift, but this evidence alone simply does not support an inference that Groceryworks was aware that he had clocked out prior to completing these tasks and therefore knew or should have known that he was performing these tasks off-the-clock.

Lastly, Cleveland argues that Groceryworks should have been aware of his off-the-clock work because its enforcement of a "predetermined quota" of two deliveries per hour made it "impossible" not to work off-the-clock without being disciplined. Opp'n at 4–5. Cleveland testified that he made efforts to conceal his off-the-clock work because he feared that working over his six hour shift or achieving a low DPH would result in a "write up" or other discipline which he believed could threaten his job. *Id.*; Cleveland Dep. 152:09–15, 153:01–06, 206:23–207:12. Even setting aside the lack of evidence supporting Cleveland's purported fear of discipline,[12] to the extent that Groceryworks had any performance goals, that is not evidence that Groceryworks knew or should have known that he was working off-the-clock. Groceryworks may have expected its employees to complete their daily deliveries, but that does not support an inference that Groceryworks expected its employees to do so in contravention of other company policies, including the explicit prohibition against off-the-clock work. Henry Decl. Ex. D at D062505. Indeed, Cleveland himself acknowledged that Groceryworks had made it clear that drivers were to inform the operations manager of any delays causing them to depart the store late, and that Groceryworks instructed drivers to take their breaks regardless of whether that caused further delay in completing their deliveries. *See* Henry Decl. ¶ 12 & Ex. E; Barnes Decl. ¶¶ 15,

---

[12] Not only does Cleveland fail to provide any evidence that DPH remained a metric enforced or used in drivers' performance evaluations following the departure of Yvette Gutierrez in 2009, which falls before the relevant period for evaluation of this motion, Cleveland does not submit evidence establishing that DPH, only one of several metrics used to evaluate performance, superseded in any way the express policy of Groceryworks against off-the-clock work and the falsification of time records, which Cleveland understood and acknowledged were also grounds for discipline or termination. Cleveland Dep. 50:21–51:04; *see York v. Starbucks Corp.*, No. 08-CV-07919-GAF, 2011 WL 8199987, at *29 (C.D. Cal. Nov. 23, 2011) ("Even if assistant managers and their supervisors were partially incentivized to work off the clock . . . , these incentives would be countered by a well-established and clear policy prohibiting off-the-clock work.").

United States District Court
Northern District of California

United States District Court
Northern District of California

18; Cleveland Dep. 41:17–42:06, 129:13–24.  Cleveland has submitted no evidence, beyond pure conjecture, to support his assertion that he would have been disciplined if he had accurately reported the time it took him to do his work, and moreover, Cleveland fails to explain how his fear of discipline would or could have served to inform management that he was working off-the-clock.

In sum, the theories offered by Cleveland to support his claim that Groceryworks actually or constructively knew about his off-the-clock work amount to little more than speculation and conjecture that Groceryworks may have had knowledge.  As in *White*, conjecture affords no grounds to impute knowledge.  *See White*, 497 F. Supp. 2d at 1083–84; *see also Jong*, 226 Cal. App. 4th at 397; *Koike*, 2008 WL 7796650, at *6.  Imputing constructive knowledge would be particularly inappropriate given that Cleveland made efforts to conceal his off-the-clock work from Groceryworks.  Cleveland Dep. 145:1–10, 206:23–207:15.  Accordingly, Groceryworks's motion for summary judgment on Cleveland's claim for failure to compensate off-the-clock work is GRANTED.[13]

### 2.  Failure to Provide Meal Periods

California law requires that—absent waiver, agreements to modify this requirement, or an exception to the requirement set forth in an applicable IWC wage order—employers must provide employees thirty minute off duty meal periods at specified intervals.[14]  Cal. Lab. Code § 512(a); Cal. IWC Wage Order No. 5; *Safeway, Inc. v. Super. Ct.*, 238 Cal. App. 4th 1138, 1147–48 (2015).  "[A]n employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work."  *Brinker*, 53 Cal. 4th at 1049.  If an employer fails to provide a meal break required under section 512(a), the employer

---

[13] Because the Court grants Groceryworks's motion for summary judgment as to Cleveland's off-the-clock claims on the grounds that Cleveland has submitted insufficient evidence from which a reasonable jury could find that Groceryworks knew or should have known that Cleveland was engaging in off-the-clock work, the Court declines to address Groceryworks's argument regarding the specificity of evidence necessary to prevail on this claim or its estoppel defense.  *See* Mot. at 7–10.

[14] When "off duty" breaks are not feasible, IWC Wage Order No. 9 provides for "on duty" breaks by written agreement.  *Brinker*, 53 Cal. 4th at 1036.

24

1    must "pay the employee one additional hour of pay at the employee's regular rate of compensation

2    for each workday that the meal or rest or recovery period is not provided."  Cal. Lab. Code

3    § 226.7(c).

4         The employer satisfies this obligation if it relieves its employees of all duty, relinquishes

5    control over their activities and permits them a reasonable opportunity to take an uninterrupted

6    thirty minute break, and does not impede or discourage them from doing so.  *Brinker*, 53 Cal. 4th

7    at 1040.  Over and above this, however, an employer is not obligated to police meal breaks and

8    ensure no work is performed during that time.  *Id*. at 1040–41.  Bona fide relief from duty and the

9    relinquishing of control satisfies the employer's obligations, and work by a relieved employee

10   during a meal break does not thereby place the employer in violation of its obligations and create

11   liability for premium pay under California IWC Wage Order No. 5, subdivision 11(b) and

12   California Labor Code section 226.7(c).  *Id*.  Nor does an employer's knowledge that an employee

13   is working during a meal period, alone, give rise to liability for breach of the employer's

14   obligation to provide the break, although it does require the employer to pay for that time worked.

15   *Id*. at 1040.

16        However, an employer "may not undermine a formal policy of providing meal breaks by

17   pressuring [its] employees to perform their duties in ways that omit breaks."  *Brinker*, 53 Cal.4th

18   at 1040–41 (recognizing that a "common scheduling policy that made taking breaks extremely

19   difficult would show a violation" of California's meal break laws).  Courts that have examined the

20   issue of what suffices to give rise to liability for constructive failure to provide breaks agree that

21   "[l]iability for failure to provide meal breaks and rest breaks is premised on the employer's

22   actions, and not necessarily the employee's actions."  *Carrasco v. C.H. Robinson Worldwide, Inc.*,

23   No. 1:13-CV-01438-LJO, 2013 WL 6198944, at *9 (E.D. Cal. Nov. 27, 2013) (holding that an

24   employer did not undermine a formal policy of providing meal and rest periods where the

25   employee alleged that she forewent meal and rest breaks "to be able to timely complete the tasks

26   assigned" by her employer and otherwise feared ridicule, but failed to identify any actions on

27   employer's part that would give rise to liability).

28        Accordingly, courts have not hesitated to grant summary judgment where plaintiffs have

United States District Court
Northern District of California

25

skipped breaks of their own accord due to pressure they feel to complete their job in a given

amount of time, absent evidence that their employer took action to prevent or impede employees

from taking their meal or rest breaks.  In *Roberts v. Trimac Transportation Services (Western),*

*Inc.*, No. C12-05302-HRL, 2013 WL 4647223 (N.D. Cal. Aug. 28, 2013), the plaintiff, a delivery

driver, claimed that notwithstanding his employer's policy requiring that he take a meal period, he

believed that his employer wanted drivers to complete their work as quickly as possible and

therefore, due to the time pressures of the job, he did not take meal breaks.  *Roberts*, 2013 WL

4647223, at *3–4.  The court granted summary judgment for the employer, holding that the

employer was not liable for failure to provide meal breaks without factual evidence above the

plaintiff's subjective belief that his employer wanted him to skip breaks to complete his deliveries.

*Id.*; *see also Plaisted v. Dress Barn, Inc.*, No. 2:12-CV-01679-ODW, 2013 WL 300913, at *3–4

(C.D. Cal. Jan. 25, 2013) (holding that an employer was not liable for failure to provide breaks

where the plaintiff alleged that she had too much work to do in too little time, because any

pressure she felt that caused her to work through breaks was not attributable to actions of

employer, but rather "the choice, as the evidence shows, was all hers.").  In *Reece v. Unitrin Auto*

*and Home Insurance Company*, No. 5:11-CV-03960-EJD, 2013 WL 245452 (N.D. Cal. Jan. 22,

2013), the plaintiff argued that his employer structured his schedule in such a way as to make it

"impossible" for him to take meal breaks and that the "sheer volume of [his] work and the

expectations placed upon him[] made taking breaks physically impossible."  *Reece*, 2013 WL

245452, at *6 (quoting the plaintiff's opposition brief).  The court granted summary judgment for

the employer because the plaintiff failed to provide evidence "to support these conclusory notions

that [the employer] failed to provide or prevented Plaintiff from taking the meal and rest breaks."

*Id.* (also noting evidence submitted by the employer of its policies requiring employees to take

breaks, the plaintiff's testimony that no one had ever led him to believe he could not take his

breaks, and that the plaintiff never complained about being unable to take breaks); *see also Novoa*

*v. Charter Commc'ns*, 100 F. Supp. 3d 1013 (E.D. Cal. 2015) (drawing parallels to *Reece*, and

granting summary judgment against an employee's break claims where the plaintiff claimed he

was so busy he could not take lunch or breaks until after his five hour shifts because the evidence

26

1   tended to show not that his employer failed to provide him breaks, but rather that the plaintiff

2   voluntarily delayed his breaks by choice in violation of his employer's policy).

3          Cleveland does not contend that his supervisors ever asked him to work through his meal

4   periods or otherwise explicitly required him to do so.  Cleveland Dep. 116:07–09, 117:04–06.

5   Cleveland testified that he was aware of, and agreed to abide by, Groceryworks's policy requiring

6   him to take his meal breaks, off-duty, in compliance with California law except in cases where he

7   had signed a waiver.  *Id.* at 54:08–12, 98:03–09, 100:08–19, 101:23–102:15, 103:13–23, 109:20–

8   22.  Cleveland also acknowledged that failure to take his meal and rest breaks, including

9   misreporting time spent on breaks, is a violation of Groceryworks's policy that could result in

10  discipline, up to termination.  *Id.* at 50:04–51:06.  Cleveland admits that he was aware that he was

11  allowed to take a one hour meal period if he wanted.  *Id.* at 129:03–12.  Cleveland did not

12  complain to anyone about missing meal breaks within the relevant claims period.[15]  *Id.* at 222:15–

13  18.

14         In support of his claims and in opposition to Groceryworks's Motion, Cleveland contends

15  that Groceryworks failed to provide Cleveland with meal breaks because its policies and

16  procedures discouraged drivers from taking these breaks.  Opp'n at 5.  Throughout his deposition,

17  Cleveland refers to the situation as a "lose-lose."  Cleveland Dep. 111:01–08, 117:11–21, 122:23–

18  24, 123:02–05, 125:02–10, 141:05–07, 216:18–20.  This argument, however, is exactly the type of

19  argument that has been consistently rejected by California courts and, moreover, is contrary to the

20  facts set forth in the record.  Cleveland's main argument is that he was discouraged from taking

21  his meal period because he feared taking breaks would lead to discipline in the form of a write-up

22  or otherwise, yet he fails to submit evidence demonstrating that the threat of discipline existed.

23  _____

24  [15] Cleveland did complain on several occasions to Yvette Gutierrez in 2008 that he was having
    difficulty taking his meal break and completing his deliveries, to which she reiterated
25  Groceryworks's policy that he needed to either take his lunch on the road or timely complete his
    deliveries and then return to the store to take his lunch.  Cleveland Dep. 221:07–222:18.  As
26  discussed above, this evidence is irrelevant for purposes of this motion because Cleveland released
    all claims against Groceryworks that arose prior to July 22, 2010.  Even if that were not so,
27  however, nothing about Yvette Gutierrez's reply tends to show that Groceryworks discouraged or
    impeded Cleveland's meal breaks; on the contrary, it shows that Cleveland was aware that
28  Groceryworks required him to take his breaks.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Cleveland admits that he was never disciplined for not taking meal breaks or exceeding his six

2   hour shift limits.[16]  Cleveland Dep. 124:25–125:02.  DPH ceased to be used as a metric in

3   Cleveland's performance evaluations after August 2009.[17]  *Id*. at 24:10–25:06.  Speculation alone

4   that he might be subject to a write-up or other discipline for a low DPH, without more, is not

5   sufficient to defeat summary judgment on this issue.  *See Carrasco*, 2013 WL 6198944, at *9

6   (granting summary judgment on a meal break claim and rejecting the plaintiff's argument that she

7   worked through breaks to avoid ridicule, where there was no evidence of any actions by her

8   employer that demonstrated that the threat of ridicule existed); *Roberts*, 2013 WL 4647223, at *4–

9   5 (granting summary judgment where the plaintiff submitted no competent evidence besides

10  speculation to support his assertion that his employer wanted drivers to complete their job as

11  quickly as possible and therefore he could not take breaks).  On the other hand, Groceryworks has

12  submitted ample evidence to the contrary—including Cleveland's own deposition testimony—

13  showing that Cleveland was told explicitly on several occasions that his breaks were to be

14  observed, even if it meant being late on his deliveries.  Cleveland Dep. 113:21–114:11, 129:13–

15  24, 131:15–21, 128:22–129:24, 131:15–21.  Groceryworks was aware that drivers might be

16  delayed in departing on their route, but told Cleveland and other drivers to manage their schedules

17  and routes to ensure that they took their meal and rest periods.[18]  *Id*. at 113:21–114:11.

18          Alternatively, Cleveland argues that, because on-the-road lunches required him to monitor

19  his truck's refrigeration levels and stay near his truck, he was denied a meal break because he was

20

21  [16] Of course, this may be because Cleveland consistently misreported on-the-road lunch breaks to
22  his supervisors so as not to complete his deliveries late, but absent evidence that such
    consequences would follow, summary judgment cannot be defeated by speculating as to what
23  discipline, if any, Cleveland may have been subjected to should he have followed Groceryworks
    policy, taken a full break, and delivered the groceries late.
24  [17] Cleveland's only evidence that drivers were required to maintain a certain DPH or would face
    discipline are the two performance evaluations submitted by Yvette Gutierrez.  As discussed
25  above, however, because these performance evaluations are dated prior to July 22, 2010, they are
    irrelevant to Cleveland's current claims against Groceryworks.
26  [18] Thus, the parties' debate over how effective the Descartes route-planning system was is
    irrelevant.  Even where Cleveland may have been delayed in returning upon his first shift,
27  foreclosing his ability to take a full thirty minutes near the store during the hour Descartes
    scheduled off, Groceryworks permits employees to take a meal break at any time after their third
28  hour of work and no later than their fifth hour.  Sohlgren Decl. Ex. A at D003415.

1    not relieved of all duty.  Opp'n at 7; Cleveland Dep. 131:06–13, 132:16–133:08, 195:17–196:04;

2    Cleveland Decl. ¶ 8.

3            Groceryworks objects to Cleveland's declaration statements regarding the operation of his

4    refrigerated delivery truck on the ground that Cleveland has not established himself as an expert in

5    these trucks.[19]  Obj. at 4.  This challenge to Cleveland's testimony about his truck is easily

6    disposed of.  Groceryworks invokes Federal Rule of Evidence 701, which limits a lay witness to

7    lay testimony.  Fed. R. Evid. 701; Obj. at 4.  Rule 701 bars lay witnesses from giving opinions

8    based on technical or specialized knowledge, which are governed by Federal Rule of Evidence

9    702.  *See* Fed. R. Evid. 701.  Instead, lay opinion is proper only when it involves a witness

10   "stat[ing] his conclusions based upon common knowledge or experience."  *Freedom Wireless, Inc.*

11   *v. Bos. Commc'ns Grp.*, 369 F. Supp. 2d 155, 157 (D. Mass. 2005) (citing *United States v. Oliver*,

12   908 F.2d 260, 263–64 (8th Cir. 1990)).  The distinction between lay and expert witness testimony

13   is that lay testimony "results from a process of reasoning familiar in everyday life," while expert

14   testimony "results from a process of reasoning which can be mastered only by specialists in the

15   field."  Fed. R. Evid. 701 advisory committee note (citing *State v. Brown*, 836 S.W.2d 530, 549

16   (Tenn. 1992)).  According to the advisory committee note:

17               [C]ourts have permitted the owner or officer of a business to testify
             to the value or projected profits of the business, without the
18           necessity of qualifying the witness as an accountant, appraiser, or
             similar expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d
19           1153 (3d Cir. 1993) (no abuse of discretion in permitting the
             plaintiff's owner to give lay opinion testimony as to damages, as it
20           was based on his knowledge and participation in the day-to-day
             affairs of the business). Such opinion testimony is admitted not
21           because of experience, training or specialized knowledge within the
             realm of an expert, but because of the particularized knowledge that
22           the witness has by virtue of his or her position in the business.

23   *Id.*

24

25   [19] Although Groceryworks only objects to statements in Cleveland's declaration regarding the
     operation of his refrigerated truck, the Court construes Groceryworks's objection as applying to
26   such statements in both his declaration and deposition, because Federal Rule of Evidence 701
     applies to both.  In his Opposition, Cleveland relies solely on his deposition testimony in support
27   of his argument about being denied a compliant meal break on the basis of being responsible for
     his truck while on his lunch.  Opp'n at 7.
28

United States District Court
Northern District of California

1       Accordingly, when a witness testifies to institutional operations and practices based on

2   personal knowledge that the witness has accrued over the course of several years of employment,

3   the witness usually is providing lay testimony not subject to the rule governing admission of

4   expert testimony.  *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1114 (N.D. Cal. 2014)

5   (citing Fed. R. Evid. 701 advisory committee note); *see In re Google AdWords Litig.*, No. 5:08-

6   CV-3369-EJD, 2012 WL 28068, at *5–7 (N.D. Cal. Jan. 5, 2012) (permitting two different Google

7   employees to testify about how that company's AdWords and AdSense systems worked and how

8   advertisers responded to them, based on the witnesses' personal experiences at the company);

9   *Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. CV-00-20905-RMW, 2008 WL 504098, at *4

10  (N.D. Cal. Feb. 19, 2008) (noting that the rules of evidence have long permitted a person to testify

11  to opinions about their own businesses based on their personal knowledge of their business).

12      It is undisputed that Cleveland drove a refrigerated truck as part of his job as a grocery

13  delivery driver.  Cleveland Dep. 130:20–131:04, 132:16–133:02, 196:18–25.  In his declaration,

14  he testified that "the refrigeration only works while the truck is running.  If it is hot outside and if I

15  have items in the truck that need to stay cold, I cannot leave the truck for 30 minutes . . . ."

16  Cleveland Decl. ¶ 8.  That Cleveland testified to the basic operations of his company vehicle does

17  not require "scientific, technical, or otherwise specialized knowledge."  Fed. R. Evid. 701.  This

18  testimony does not result from reasoning mastered by only specialists in the field, but instead is

19  "rationally based on (his) perception" stemming from his personal experience as a grocery

20  delivery driver.  *Id.*  Further, Cleveland's statements could be construed as his understanding of

21  his job responsibilities rather than as a technical requirement of the truck.  Accordingly,

22  Cleveland's deposition testimony and statements made in his declaration regarding the operation

23  of his truck are admissible.

24      The Court finds that Cleveland's testimony on the matter of needing to remain near his

25  truck to monitor refrigeration levels, if found credible by a jury, could support a finding that

26  Cleveland was not relieved of all duty during these on the road meal periods, which would entitle

27  him to compensation.  *Brinker*, 53 Cal. 4th at 1035; *Bono Enters., Inc. v. Bradshaw*, 32 Cal. App.

28  4th 968, 973 (1995), *disapproved on other grounds by Tidewater Marine W., Inc. v. Bradshaw*, 14

United States District Court
Northern District of California

1    Cal. 4th 557, 574 (1996).

2        "Unless the employee is relieved of all duty during a 30 minute meal period, the meal

3    period shall be considered an 'on duty' meal period and counted as time worked."  Cal. Code

4    Regs., tit. 8, § 11070, section 11; *Brinker*, 53 Cal. 4th at 1035 (defining an off-duty meal period as

5    "an uninterrupted 30–minute period during which the employee is relieved of all duty").  "What

6    will suffice [to provide an off-duty meal period] may vary from industry to industry."  *Brinker*, 53

7    Cal. 4th at 1040.  Courts construe the duty-free meal break requirement liberally to accomplish the

8    objective of protecting the welfare of affected workers.  *Bono*, 32 Cal. App. 4th at 974 (1995).

9        In *Bono*, the court held that when "an employer directs, commands or restrains an

10   employee from leaving the work place during his or her lunch hour and thus prevents the

11   employee from using the time effectively for his or her own purposes, that employee remains

12   subject to the employer's control" and therefore must be compensated for that time.[20]  *Bono*, 32

13   Cal. App. 4th at 975.  The employer in that case required workers to remain on its premises during

14   their thirty minute lunch breaks for security reasons.  *Id*. at 972.  Several employees brought suit,

15   claiming that because they "remained under the direction and control" of the employer during

16   these lunch breaks, they were entitled to compensation under the California wage and hour laws.[21]

17   *Id*.  In examining the "subject to the employer's control" language of the applicable IWC wage

18   order, the court upheld the California Labor Commissioner's interpretation of the IWC wage order

19   requiring an employer to compensate employees for meal periods in which they are precluded

20

21   [20] The *Bono* court applied the FLSA standard for off-duty time to the California Wage Orders
     ("The question of whether an employee is off duty depends upon whether the time is "long enough
22   to enable him to use the time effectively for his own purposes.").  *Bono*, 32 Cal. App. 4th at 976.
     [21] IWC Wage Order No. 1-89, codified at Cal. Code Regs., tit. 8, § 11010, provides: "Every
23   employer shall pay to each employee, on the established payday for the period involved, not less
     than the applicable minimum wage for all hours worked in the payroll period . . . ."  Subdivision
24   2(G) defines "hours worked" as: "[t]he time during which an employee is subject to the control of
     an employer, and includes all the time the employee is suffered or permitted to work, whether or
25   not required to do so."  Cal. Code Regs, tit. 8, § 11010(4)(B).  Subdivision 11 sets forth the policy
     regarding meal periods, and states "[u]nless the employee is relieved of all duty during a thirty
26   (30) minute meal period, the meal period shall be considered an 'on duty' meal period and counted
27   as time worked."  *Id*. § 11010(11)(C); *Bono*, 32 Cal. App. 4th at 973.

28

from leaving employer's premises. *Id*. at 979. As part of its decision, the *Bono* court emphasized that the absence of duty and freedom from employer control were central to the determination of whether time was on or off duty. *Id*. at 975.

The court in *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), affirmed this principle, holding that the plaintiffs, required by the employer to commute to and from work using employer's buses, were entitled to compensation because by requiring that the employees take its buses, "employers thereby subject[ed] those employees to its control by determining when, where, and how they are to travel" and "prohibit[ed] them from effectively using their travel time for their own purposes." *Morillion*, 22 Cal. 4th at 586, 588; *cf. Porch v. Masterfoods USA*, Inc., 685 F. Supp. 2d 1058, 1073–74 (C.D. Cal. 2008) (relying on *Bono* and *Morillion*, finding that an employee was not entitled to compensation for "on duty" lunch breaks where the employer encouraged employees to use an on-site cafeteria, but did not require it). The *Morillion* court explained, the "level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative of whether time is on duty." *Morillion*, 22 Cal. 4th at 587–88.

While there is no definitive case law on whether a need to monitor a truck's refrigeration levels on a driver's lunch break rises to the level of compensable hours worked, the reasoning employed by *Jernagin v. City of Los Angeles*, No. B241411, 2013 WL 2336342 (Cal. Ct. App. May 29, 2013) is persuasive. In *Jernagin*, plaintiffs brought suit claiming that the restrictions placed on their lunch break by their employer violated California Labor Code sections 226.7 and 512, and the California IWC wage orders. *Jernagin*, 2013 WL 2336342, at *1. The court affirmed the lower court's interpretation of the applicable wage order, in which it decided that an employer's prohibition against garbage truck drivers sleeping in their trucks or "congregating" with other drivers during their lunch breaks rose to a level of control that required employer to compensate for an on duty lunch break. *Id*. at *10–11 (interpreting IWC Wage Order No. 9, codified at Cal. Code Regs., tit. 8, § 11070, which requires employers to compensate for "all hours worked"). Employing the *Morillion* standard, the *Jernagin* court explained that its decision was based on the fact that "[d]uring their meal breaks the City's sanitation truck drivers are not free in

32

1    all respects to use 'the time effectively for [their] own purposes.'" *Id*. at *11 (quoting *Morillion*,

2    22 Cal. 4th at 586).  The *Jernagin* court further explained that *Brinker* makes clear that relief from

3    *all* duty is the standard for an off duty lunch break, not merely relief from most duty.  *Id*. at *12.

4          At the hearing, Groceryworks's counsel raised for the first time Cleveland's deposition

5    testimony that a driver "may leave the vehicle maybe unattended for 30 minutes," although

6    Cleveland also stated that drivers "still have to worry about the temperature gauge on these

7    refrigerated and frozen items, because [the refrigeration units] do not run with the vehicle being

8    powered off."  *See* Cleveland Dep. 196:21−25.  The Court finds that although this testimony may

9    well be relevant to the ultimate resolution of factual questions at issue, it does not contradict

10   Cleveland's statement in his declaration that he must stay with the truck in hot weather to prevent

11   food from spoiling.  *See* Cleveland Decl. ¶ 8.  At his deposition, Cleveland did not discuss hot

12   weather, he qualified his answer by stating that a driver could "leave the vehicle *maybe* unattended

13   for 30 minutes," and he noted that a driver would "have to worry about the temperature gauge"

14   even if he or she could leave the truck.  Cleveland Dep. 196:21−25.

15         The Court holds that Cleveland has submitted sufficient evidence to allow a reasonable

16   jury to conclude that he was required to remain near his truck on his lunch break in at least some

17   circumstances, which could support a finding that Groceryworks did not relieve him of all duty on

18   his on the road lunches.  While there is no evidence that Groceryworks prohibited Cleveland from

19   conducting personal business on breaks, or from using his company vehicle to travel where he

20   pleased, Cleveland has testified that how he could spend his lunch breaks was constrained by the

21   "common sense" requirement that he needed to monitor the refrigeration levels in the truck so as

22   to ensure that no food spoiled when the power was turned off.  Cleveland Dep. 195:11−16,

23   196:16−197:13; Cleveland Decl. ¶ 8.  A reasonable jury could conclude from this testimony that

24   Cleveland was indeed required by Groceryworks to do so, and thus was not relieved of all duty.[22]

25   _____

26   [22] The meal break policies distributed by Groceryworks to Cleveland state that "[e]ven if you
     choose to eat inside your truck, you must not work while taking your meal period."  Barnes Decl.
27   Ex. A at D003420.  Describing the matter as a "choice," however, is misleading if Groceryworks
     implicitly required drivers to remain in or near their trucks during their meal periods.  The

28

1    Accordingly, Groceryworks's motion for summary judgment on Cleveland's meal period claim is

2    DENIED.[23]

3                        **3.    Failure to Provide Rest Periods**

4            California law requires employers "to authorize and permit" a "net ten minute" rest period

5    for every four hours of work.  Cal. Code Regs., tit. 8, §§ 11040(11)(A), 11040(12); *White*, 497 F.

6    Supp. 2d at 1085–86 (citing IWC Wage Order No. 7); Opinion Letter from Anne Stevason, Acting

7    Counsel, Dep't of Labor Standards Enforcement, to Raymond Buenia, (Feb. 22, 2002), *available*

8    *at* http://www.dir.ca.gov/dlse/opinions/2002-02-22.pdf [hereinafter February 22, 2010 DLSE

9    Opinion Letter].  Under this rule, "[e]mployees are entitled to 10 minutes rest for shifts from three

10   and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30

11   minutes for shifts of more than 10 hours up to 14 hours, and so on."  *Brinker*, 53 Cal. 4th at 1029.

12   Rest breaks should be taken in the middle of each work period "insofar as practicable," but

13   "employers are given some latitude as they may "deviate from that preferred course where

14   practical considerations render it infeasible."  *Id.* at 1031 (citing IWC Wage Order No. 5).  The

15   California Department of Labor Standards Enforcement ("DLSE") has opined that an employee

16   must be permitted to take the ten minutes of paid rest time in an uninterrupted block (i.e., one ten

17   minute rest period, not two five minute rest periods).  February 22, 2002 DLSE Opinion Letter.

18   Because employees are being paid for their rest breaks, employers need not keep records of the

19   times employees begin and end their rest breaks, and employers can require their employees to

20

21   ─────────────────────────────────────────

     question of whether the decision to remain with the truck during on the road lunches was a choice
22   or was imposed by the company is one of fact for the jury.

     [23] Cleveland's other arguments are unpersuasive or irrelevant.  First, Cleveland's argument that he
23   was not fully trained on the meal and rest period policies, *see* Opp'n at 7, is unavailing, as
     Cleveland himself testified that he was nonetheless aware of Groceryworks's meal and rest break
24   requirements.  Cleveland Dep. at 54:08–12, 98:03–09, 100:08–19, 101:23–102:15, 103:13–23,
     109:20–22.  Further, Cleveland's arguments that Groceryworks acknowledged that meal breaks
25   may need to be missed due to various circumstances and therefore provided drivers with waivers
     for on-duty meal breaks, and that neither Tonya Webster nor Judi Henry knew what a missed meal
26   period premium is, *see* Opp'n at 6, are immaterial as neither are evidence that Groceryworks either
     failed to provide Cleveland with meal breaks or discouraged Cleveland from taking them.
27

28

                                                    34

remain on the premises during their rest breaks.  Cal. Code Regs., tit. 8, § 11040(12).

The California Labor Code provides that an employer may not "require any employee to work during any meal or rest periods mandated by an applicable order of the Industrial Welfare Commission."  Cal. Lab. Code § 226.7.  As with meal periods, this language only requires employers to make rest breaks available, but does not require employers to ensure that employees actually take their rest periods.  *Cole v. CRST, Inc.*, 08-CV-01570-VAP, 2016 WL 1367016, at *3 (C.D. Cal. Apr. 1, 2016)(rejecting the argument that the *Brinker* standard that employers are not required to police breaks applies only to meal periods).  Therefore, an employer is not liable for failure to provide rest breaks if it authorizes and permits an employee to take his or her rest break and the employee—absent coercion or encouragement on the part of the employer—foregoes his or her rest period.  *White*, 497 F. Supp. 2d at 1086; *Cole*, 2016 WL 1367016, at *3; Opinion Letter from Anne Stevason, Acting Counsel, Dep't of Labor Standards Enforcement, to Robyn Babcock, (Jan. 28, 2002), *available at* http://www.dir.ca.gov/dlse/opinions/2002-01-28.pdf [hereinafter January 28, 2002 DLSE Opinion Letter] ("An employer is not subject to any sort of penalty or premium pay obligation if an employee who was truly authorized and permitted to take a rest break, as required under the applicable wage order, *freely chooses without any coercion or encouragement* to forego or waive a rest period." (emphasis in original)).

In *Augustus v. ABM Sec. Servs., Inc.*, 233 Cal. App. 4th 1065 (2014), the court clarified that the standards set forth by the Supreme Court in *Brinker* between meal and rest breaks are "qualitatively different" in some respects, noting that "[*Brinker*] said nothing about an employer's obligation to relieve an employee of all duty on a *rest* break.  The discussion in *Brinker* regarding the relieved-of-all-duty requirement concerned meal periods only."  *Augustus*, 233 Cal. App. 4th at 1081–82 (emphasis in original).  In *Augustus*, security guards brought suit under the California Labor Code and the IWC Wage Orders alleging that their employer failed to provide rest breaks, because by requiring them to remain on call, it failed to relieve the security guards of all duty during their rest breaks.  *Id.* at 1070.  The court disagreed that this constituted a violation of the rest break laws, holding that prohibiting an employer from requiring an employee to work during a rest period, California Labor Code section 226.7, does not prohibit an employer from requiring the

35

1   employee to remain on call during rest periods, since simply being on call does not constitute

2   performing "work." *Id.* at 1077–78, 1082 ("In sum, although on-call hours constitute 'hours

3   worked,' remaining available to work is not the same as performing work."). The meaning of

4   "work" in the prohibition against requiring an employee to work during a rest break has a different

5   meaning than "work" for purposes of the requirement that an employer compensate employees for

6   "all hours worked." *Id.* at 1077 (analyzing language in IWC Wage Order 4, codified at Cal. Code

7   Regs., tit. 8, §11040(2)(K)). Under the IWC Wage Order defining "hours worked" as "the time

8   during which an employee is subject to the control of the employer," "work" is a noun meaning

9   "employment," or time during which an employee is subject to an employer's control. *Id.*

10  "Work" as a verb, however, means "exertion," or activities an employer may suffer or permit an

11  employee to perform. *Id.* The *Augustus* court held that "work" for purposes of California Labor

12  Code section 226.7 is meant as a verb, meaning "exertion on an employer's behalf." *Id.* at 1077.[24]

13       Cleveland was aware of Groceryworks's rest period policy authorizing and permitting

14  drivers to take a fifteen minute rest period for every four hours of work. Cleveland Dep. 52:08–

15  14, 98:03–09, 101:23–102:09. Cleveland admits that no supervisor ever told him not to take his

16  rest periods. *Id.* at 154:22–25, 174:01–12, 227:20–22. Cleveland also admits that Groceryworks

17  expected him to take his rest breaks, and told him to manage his own schedule to ensure he was

18  taking rest breaks. *Id.* at 37:25–38:04, 113:21–25, 169:15–19, 219:14–24. Cleveland testifies that

19  he did not consult with anyone prior to making the decision not to take his rest breaks, because "if

20  [he] did, then they were going to tell [him] to take a break." *Id.* at 171:05–10. Cleveland was

21  never disciplined for failing to take his rest breaks. *Id.* at 182:24–183:01.

22       Cleveland's main argument as to why Groceryworks violated Cleveland's statutory right to

23  rest periods is the same as his main meal period argument: that his schedule was too busy to allow

24

25  ―――――――――――――――――
    [24] The California Supreme Court has granted a petition for review and taken briefing in *Augustus*.

26  *See Augustus v. ABM Sec. Servs.*, 347 P.3d 89 (Cal. 2015). Pending a decision on that review, this
    Court chooses to follow the reasoning of the Court of Appeal's now-superseded opinion discussed

27  above. Cleveland may seek leave to file a motion for reconsideration if the California Supreme
    Court reaches a decision in *Augustus* that would alter the outcome of this Order.

28

him to timely complete all his deliveries and take all his breaks.[25]  Opp'n at 5–7; Cleveland Dep. 172:11–173:19 (claiming that he did not take rest breaks because he did not want to be disciplined for having low DPH or for exceeding his six hours per shift).  As outlined in the preceding section, this argument is unpersuasive absent evidence that Groceryworks took action to prevent Cleveland from taking his breaks or encouraged him to do so.  Cleveland has failed to offer any such evidence, and the court is unable to locate any.  Cleveland's own testimony that his workload was too heavy to allow him to take his rest breaks is insufficient to defeat summary judgment.  *E.g.*, *Carrasco*, 2013 WL 6198944, at *9 (holding that the plaintiff's argument that she routinely missed rest breaks so that she could complete her job duties on time, meet deadlines, and avoid ridicule for working inefficiently was insufficient to survive summary judgment absent evidence of specific actions by her employer preventing her from taking rest breaks); *Plaisted*, 2013 WL 300913, at *4 (same); *Reece*, 2013 WL 245452, at *5–6 (same).

Cleveland submits some evidence unique to his rest period claim, namely his deposition testimony that he complained to his operations manager about not being able to take his rest breaks due to delays leaving the store and that he was occasionally interrupted while taking a rest break:

> A. I have complained to Tonya about not being able to take my breaks.
>
> Q. How many times did you do that?
>
> A. I can say -- I don't have a number, but I can say it was multiple times, maybe a few times a year, maybe, about five or ten times a year, somewhere in that range.
>
> Q. And what did you tell her?
>
> A. For one, it may have been -- I may have talked to her about the issue of me being a loader and me taking my break, and me being instructed to go back to work or do this, and then you can take your break, or it may have actually been times -- or actually, I'm not going to say it may have been, but it was actually times that my Operations Manager had arrived to the store, and I'm on break, and she tells me that, well, you need to go load these trucks or something like that. And I'm, like, I'm on break. And it's, like, she will then

---

[25] Cleveland does not address his rest break claim separately from his meal period claim.

1    have to look at the time and be, like, oh, you are on break.

2    Q. Then did she allow you to complete your break?

3    A. Yeah, I was allowed to complete my break. But I shouldn't have
     to go through that. If drivers are supposed to be responsible for
4    taking their own breaks, then I should be able to take my own break,
     and I shouldn't have to explain that I'm taking my break, and I
5    shouldn't have to complain that I'm taking my break, why are you
     bugging me while I'm on my break?

6    Q. How would she know that if she's just walking into the store?

7    A. And that's true. But if drivers are responsible for their own
     breaks, do we have -- why should we have to report rest breaks?
8    We're not required to report rest breaks, and we shouldn't be
     questioned. Maybe if she had maybe seen me at the same location
9    not doing anything for maybe 15 minutes, she may have seen me,
     maybe then I can understand there being a question. Or maybe, "Are
10   you on break?" "Yeah, I'm on a break." Or don't just assume that
     I'm not on a break and I'm just standing around. It was one thing to
11   accuse a person of just standing around. It's another thing to ask if
     you're on a break.

12
     Q. How about when you're driving and doing deliveries? Did you
13   ever complain to Tonya Webster about not being able to take rest
     breaks while you were doing deliveries?
14
     A. With leaving the store late, I told her that I got -- going to have
15   issues with arriving -- with completing my orders and arriving back
     to the store by my sixth hour, and I'm going to have an issue with
16   taking a break.

17   Q. Are you talking about a meal break now?

18   A. I'm talking about just a regular break.

19   Q. Regular break?

20   A. Just the one --

21   Q. And what was her response when you told her that?

22   A. Just do the best that I can to try to get my break in.

23   Cleveland Dep. 177:11–180:01; *see also* Opp'n at 7.  Cleveland addresses the issue again at

24   another point in his deposition:

25   Q. Right. My question was, did any supervisor ever instruct you to
26   work through a rest break.

27   A. Yes.

28   Q. And when did it happen?

38

A. It's actually happened quite a few times, which I would have to inform them that I'm on break.

Q. And how many times did that happen?

A. I can say it happened on a regular type of basis maybe on days that I had maybe the loader shift, which was a shift that started at 7:30 in the morning. Everyone else arrives at the store maybe 9:45 or 10. After my second hour, I'm out there, I'm taking my break when everyone arrives. I'm getting questioned, because they're thinking that I am just arriving and I'm on a break already, which I've been here since 7:30 this morning, and I'm entitled to a break. I've worked my 2 hours. I worked over 2 hours. Maybe 2 1/2, maybe 2 hours and 15 minutes. But I'm still being questioned, or maybe being asked to do this, but I had to inform them that I'm on break.

Q. And then what happened --

A. And then sometimes they would, like, well, take care of this after you take a break, or sometimes, well, can you take care of this real quick and then take a break after? And then I may have to take care of that and then take my break after.

Cleveland Dep. 118:19–119:22.

Cleveland argues that his testimony that he was interrupted during rest breaks shows that Groceryworks required him to work through these breaks.  Opp'n at 7; Cleveland Dep. 120:02–08. The *Augustus* court makes clear that being required to work, not merely being available to work, is what qualifies as a violation of California rest break law.  *Augustus*, 233 Cal. App. 4th at 1082. By his own testimony, however, Cleveland was never required to work through the rest break, and he was allowed to continue his break once he made others aware that he was on break.  Cleveland Dep. 118:19–119:22, 177:07–180:01.  Cleveland does not testify that after being asked to complete a task, he was prohibited from then taking a full, ten minute rest break.  *Id.* at 118:19–119:22.  Further, Cleveland has cited no authority, and the Court is unaware of any, that being asked to complete a task prior to taking a rest break violates California rest break laws.  The relevant DLSE opinion letter simply requires that employees be given a full ten minute rest break, it does not discuss postponing this break at the request of an employer.  *See generally* February 22, 2002 DLSE Opinion Letter; *but see Harris v. Super. Ct.*, 53 Cal. 4th 170, 190 (2011) (holding that DLSE opinion letters are not controlling and need not be followed if they do not contain persuasive logic or if they unreasonably interpret a wage order).  Nor is it evident from the IWC

39

wage orders that postponing a rest break at the request of an employer violates the law, so long as the employee is authorized and permitted to take one after completing the request.  *See* Cal. Code Regs., tit. 8, § 11040(12) (requiring only that employer authorize and permit employees to a net ten minute rest break).  While he testified that he complained to Tonya Webster that due to delays he was having difficulty completing his tasks without skipping his rest breaks, Cleveland does not submit evidence that she condoned or otherwise authorized that behavior.  Cleveland Dep. 179:11–180:01.  Indeed, by his own testimony, Cleveland admits that he believed that Groceryworks would have insisted upon him taking his rest breaks.  *Id.* at 171:05–10.  This is supported by Groceryworks's policies making it clear to drivers that their breaks were to be taken even if it meant they would be late on their deliveries.  *Id*. at 169:15–19.

Cleveland has failed to raise a genuine issue of material fact that Groceryworks did not authorize or permit him to take rest breaks. To the contrary, Cleveland specifically testified that nobody told him or instructed him not to take a rest period,[26] and instead relies on the argument rejected above that his workload constructively precluded him from taking his breaks and his own speculative testimony, without supporting factual evidence, that he would be subjected to discipline should he not forego his rest breaks.  His testimony about being "interrupted" does not demonstrate a violation of the law, an argument for which Cleveland cites no authority in any case.  Accordingly, Groceryworks's motion for summary judgment on Cleveland's rest break claim is GRANTED.

### 4.  Failure to Furnish Accurate Wage Statements

As is relevant to Cleveland's claim, California Labor Code section 226(a) requires that every employer furnish, at the time of each payment of wages, "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, . . . (5) net

---

[26] While he answers affirmatively to the question about whether a supervisor ever requested that he work through a rest break, his testimony makes clear that the supervisor did not know he was on break when they made their request and that they allowed him to continue with his break or asked him to take his break after completing a task, not forego his break entirely.  Cleveland Dep. 118:19–119:22, 177:07–180:01.

1   wages earned, . . . (9) all applicable hourly rates in effect during the pay period and the

2   corresponding number of hours worked at each hourly rate by the employee."  Cal. Lab. Code

3   § 226(a).  A claim against an employer for violating Labor Code section 226(a) requires a showing

4   of three elements: (1) a violation of the statute; (2) the violation was knowing and intentional; and

5   (3) an injury resulted from the violation.  Cal. Lab. Code § 226(e); *Willner v. Manpower Inc.*, 35

6   F. Supp. 3d 1116, 1128 (N.D. Cal. 2014).

7          Here, Cleveland argues that Groceryworks failed to furnish him with accurate wage

8   statements because they did not include his missed meal and rest break premiums.[27]  Opp'n at 12.

9   Groceryworks argues that Cleveland's section 226(a) claim fails because (1) it is derivative of his

10  failed off-the-clock, meal period, and rest break claims; (2) Cleveland has submitted no evidence

11  that any failure to furnish by Groceryworks was knowing and intentional; and (3) the non-payment

12  of missed meal and rest break premiums under section 226.7 cannot serve as a basis for a wage

13  statement claim under section 226(a).  Mot. at 16–17.

14         Under the California Labor Code, failure to furnish an employee with an accurate wage

15  statement is not a strict liability offense.  In order to prevail on a 226(a) claim, a plaintiff must

16  show: (1) a violation of the statutory provision setting forth criteria for wage statements, (2) that

17  the violation was knowing and intentional, and (3) that the employee suffered an injury as a result

18  of the violation.  *See Novoa v. Charter Commc'ns., Inc.*, 100 F. Supp. 3d 1013, 1025 (N.D. Cal.

19  2015). Simply demonstrating a violation of 226(a) does not show "knowing and intentional"

20  conduct.  *See Willner*, 35 F. Supp. 3d at 1131.

21         The Court agrees with Groceryworks that Cleveland has not submitted any evidence that

22  any failure to furnish accurate wage statements was knowing and intentional.  Cleveland does not

23

24  ―――――――――――――
    [27] Cleveland's opposition is not clear on what exact grounds Cleveland contends Groceryworks
25  violated 226(a).  The entirety of Cleveland's opposition focuses on rebutting Groceryworks's
    contention that he is barred by *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242
26  (2016), from recovering on an inaccurate wage statement claim on the basis of being owed missed
    break premiums.  Opp'n at 11–12.  The Court therefore holds that Cleveland is asserting a failure
27  to furnish claim solely on the basis of missed break premiums, and has waived all other grounds
    for asserting a failure to furnish claim.
28

United States District Court
Northern District of California

attempt to refute this argument in his opposition.  *See* Opp'n at 16–17.  The Court need not scour the record for evidence to support a plaintiff's claim on summary judgment.  *Keenan*, 91 F.3d at 1279.  At the hearing, Cleveland's counsel argued that this claim should survive because it is derivative of his missed meal break claim, which—as discussed above—may proceed to the extent that it is based on Cleveland being required to remain with his refrigerated truck to monitor temperature levels.  The Court disagrees.  Although there is sufficient evidence for a jury to conclude that Cleveland could not leave his truck for meal breaks in hot weather, Cleveland has identified no evidence that Groceryworks was aware of those instances where he was required to stay with the truck, and thus no evidence that Groceryworks knowingly failed to pay premiums for any such meal breaks.  Therefore, without reaching the issue of whether the nonpayment of a missed break premium can serve as a basis for a section 226 failure to furnish claim, the Court finds that Cleveland has failed to submit evidence sufficient to show that any failure to furnish Cleveland with accurate wage statements was knowing and intentional as is required under section 226(e).  Accordingly, Groceryworks's motion for summary judgment as to Plaintiff's claim for failure to furnish accurate wage statements on the basis of missed break premiums is GRANTED.

### 5.  Failure to Maintain Employee Time Records

California Labor Code section 1174, which sets forth duties of employers, requires every person employing labor in California "keep . . . payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments.  The records shall be kept in accordance with rules established for this purpose by the commission, . . . for not less than three years."  Cal. Lab. Code § 1174(d).

Groceryworks argues that this claim fails as a matter of law because California Labor Code section 1174 does not contemplate a private right of action.  Groceryworks is correct.  Private rights of action for civil penalties under the Labor Code generally arise under the California Private Attorney General Act ("PAGA"), not under the Labor Code directly.  *Thomas v. Home Depot USA, Inc.*, 527 F. Supp. 2d 1003, 1006–07 (N.D. Cal. 2007) (citing *Caliber Bodyworks v. Super. Ct.*, 134 Cal. App. 4th 365 (2005)).  PAGA does create a private right of action for several

portions of Labor Code, including section 1174(d); however, a claimant must exhaust certain administrative remedies as a prerequisite to bringing suit.[28]  Cal. Lab. Code §§ 2699.3, 2699.5 (providing that the requirements of section 2699.3(a) apply to an alleged violation of 1174(d)). Cleveland does not explicitly invoke PAGA, and has failed to submit any evidence that he has exhausted the administrative remedies as is required by PAGA prior to bringing an action for civil penalties under California Labor Code section 1174(d).  *See* Opp'n at 8 (failing to address the issue).  Without such evidence, he is precluded from bringing a section 1174(d) claim.  *Robles v. Agreserves, Inc.*, No. 1:14-CV-00540-AWI, 2016 WL 323775, at *33 (E.D. Cal. Jan. 27, 2016) (granting summary judgment on the plaintiff's claim under Labor Code section 558, which does not create a direct right of action but can give rise to a PAGA claim, where the plaintiff failed to submit evidence that he had adhered to the requirements of section 2699.3); *Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 WL 1110236, at *8 (N.D. Cal. Mar. 22, 2016) (dismissing a claim for violation of Labor Code section 2802 where the plaintiff failed to allege that he had exhausted the administrative remedies under 2699.3 in his complaint).  Accordingly, Groceryworks's motion for summary judgment as to Cleveland's section 1174(d) timekeeping claim is GRANTED.[29]

### 6.   Failure to Pay Waiting Time Penalties

The California Labor Code requires that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Lab.

---

[28] Section 2699.3 states that a civil action by an aggrieved employee alleging a violation of any provision listed in section 2699.5 "shall commence *only* after the following requirements have been met."  Cal. Lab. Code § 2699.3(a) (emphasis added).  First, the aggrieved employee must give written notice by certified mail to both the Labor and Workforce Development Agency ("LWDA") and the employer of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.  Cal. Lab. Code § 2699.3(a)(1).  The LWDA will then notify the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violation within 30 calendar days of the postmark date the notice was received.  *Id.* § 2699.3(a)(2)(A).  Upon receipt of that notice, or if no notice is provided within 33 calendar days of the postmark date of the notice, the aggrieved employee may commence a civil action pursuant to PAGA to recover civil penalties for the violation of the California Labor Code.  *Id.*

[29] Because the Court grants Groceryworks's motion for summary judgment on this claim on other grounds, the Court declines to address Groceryworks's alternative argument that this claim is derivative of his inaccurate wage statement claim.

1   Code § 201.  If an employer willfully fails to pay wages due under section 201, "the wages of the

2   employee shall continue as a penalty from the due date thereof at the same rate until paid or until

3   an action therefor is commenced; but the wages shall not continue for more than 30 days."  *Id.*

4   § 203.  For purposes of untimely payment of final wages, "willful failure to pay wages within the

5   meaning of Labor Code 203 occurs when an employer intentionally fails to pay wages to an

6   employee when those wages are due.  However, a good faith dispute that any wages are due will

7   preclude imposition of waiting time penalties under Section 203."  Cal. Code Regs., tit. 8,

8   § 13520.  A good faith dispute, based in law or fact, occurs when an employer presents a defense

9   that, if successful, would preclude recovery on the part of the employee, regardless of whether the

10  defense is ultimately successful.  *Id.*; *see, e.g.*, *Choate v. Celite Corp.*, 215 Cal. App. 4th 1460,

11  1468 (2013) (holding that an employer's reasonable, good faith belief that wages were not owed to

12  a discharged employee negated a finding of willfulness in failing to pay); *Barnhill v. Robert*

13  *Saunders & Co.*, 125 Cal. App. 3d 1 (1981) (holding that an employer was not liable for late

14  payment penalties where it erroneously believed it was legally entitled to set off from the

15  employee's final wages amounts that the employee owed to it because the state of law on the

16  matter was unclear).

17       Groceryworks seeks summary judgment on this claim based on the arguments that, first,

18  Cleveland has not submitted any evidence that any failure by Groceryworks to pay final wages

19  due was "willful"; and second, Cleveland is barred as a matter of law from asserting this claim on

20  the basis of nonpayment of missed break premiums.  Mot. at 18–19.  Because the Court agrees

21  with Groceryworks as to its first argument, the Court declines to reach the second issue.

22       While Cleveland does acknowledge in his opposition that the standard for a waiting time

23  claim includes a willfulness requirement, Cleveland does not meaningfully address this

24  requirement or cite any evidence in the record that would support a finding that Groceryworks

25  willfully failed to pay Cleveland final wages due.  Opp'n at 8–11.  Nor has Cleveland cited any

26  evidence that would support an inference that any failure to timely pay final wages was not due to

27  mistake or based on an otherwise reasonable, good faith belief that Cleveland was not owed these

28  wages.  As with his section 226 failure to furnish claim, the Court is not required to scour the

United States District Court
Northern District of California

record to do Cleveland's job for him.  *Keenan*, 91 F.3d at 1279.  Accordingly, Groceryworks's motion for summary judgment on Cleveland's claim for failure to timely pay all final wages due is GRANTED.

### D.    California Unfair Competition Law

As used in the UCL, the term "unfair competition" specifically includes unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading, advertising. Cal. Bus. & Prof. Code § 17200; *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012); *see Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 7 Cal. 3d 94, 108 (1972).  The California Supreme Court has made clear that the scope of the statute is exceptionally broad.  *See Barquis*, 7 Cal. 3d at 111 ("[T]he Legislature, in our view, intended by this sweeping language [in section 17200] to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.").  TheUCL prohibits any unlawful, unfair, or fraudulent business act or practice, each of which can serve as a separate basis for liability.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009).  The unlawful prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Barquis*, 7 Cal. 3d at 113.  A business practice violates the unfair prong if the business practice is contrary to established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.  *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014).  Whether a business practice is "unfair" in violation of the UCL is a question of fact.  *Smith v. Chase Mortg. Credit Grp.*, 653 F. Supp. 2d 1035, 1045 (E.D. Cal. 2009).  Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution."  *Cel-Tech*, 20 Cal. 4th at 179; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) ("While the scope of conduct covered by the UCL is broad, its remedies are limited.").

Cleveland alleges that "Defendant's failure to pay for all hours worked, failure to pay overtime pay, and other wage and hour violations, constitute unfair business practices" that violate the UCL.  Compl. ¶ 66.  Cleveland further alleges that due to the repeated and systematic nature of

United States District Court
Northern District of California

the offenses "over a significant period of time," Groceryworks's alleged violations of the California wage and hour laws constitute a business practice. *Id.* at ¶ 67. Cleveland does not make a similar allegation in his Complaint as to the ERISA claim allegations constituting a business practice. Cleveland seeks "preliminary and permanent injunctive relief" and asks the court to compel Groceryworks to "restore to the Class Members the wages unlawfully withheld from them." *Id.* at ¶ 69. Cleveland clarifies his latter demand in his opposition, stating that he seeks "restitution for unpaid wages as a result of off-the-clock work and unpaid premiums for missed meal and rest breaks." Opp'n at 12.

Groceryworks argues that it is entitled to summary judgment on Cleveland's UCL claim for two reasons. Mot. at 19–22. First, Cleveland's UCL claim is derivative of his wage and hour claims. *Id.* Second, Cleveland cannot maintain a UCL claim where he seeks restitution or an injunction to which he is not entitled. *Id.* In his opposition, Cleveland fails to respond to Groceryworks's second argument and instead argues that (1) Cleveland's UCL claim is not derivative of his wage and hour claims because Groceryworks's policies only need to be "unfair," and not necessarily "unlawful," to serve as the basis for a valid UCL claim; and (2) the UCL claim is also predicated on Cleveland's ERISA claims, which are not challenged by Groceryworks in the instant motion, and therefore at the very least the Court should not dismiss Cleveland's UCL claim in its entirety. Opp'n at 12. Groceryworks does not address either of Cleveland's arguments in its Reply, and merely reiterates the derivative nature of Cleveland's UCL claims to the other wage and hour claims. Reply at 10. The Court addresses these arguments in turn.

First, liability under the UCL is generally derivative of liability under another statutory violation. *See Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (dismissing UCL claims that were derivative of deficient claims for violations under the California Labor Code); *White*, 497 F. Supp. 2d at 1089–90 (dismissing a section 17200 claim where the underlying claim was invalid). Therefore, to the extent that Cleveland's UCL claim is predicated on any claim disposed of by this Order, Groceryworks is also entitled to judgment as a matter of

law on this claim.[30]

The Court turns next to whether Cleveland is entitled to seek recovery under the UCL as to his missed meal break premiums.[31]  First, Cleveland is not entitled to seek injunctive relief against Groceryworks in federal court.  Plaintiffs in federal court must have standing for each form of relief sought, as to both federal and state law claims.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1180 (9th Cir. 2006); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021–22 (9th Cir. 2004).  This includes actions brought in federal court under the California UCL.  *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001) (affirming the trial court's ruling that the plaintiff lacked Article III standing who did not suffer individualized injury, despite having viable state court action under UCL).  In order to have standing to seek an injunction in federal court, a plaintiff "must demonstrate that he has suffered or is threatened with a particularized legal harm coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  It is undisputed that Cleveland is no longer employed by or otherwise affiliated in any way with Groceryworks apart from the present lawsuit.  Cleveland has not identified any evidence that he faces a "real and immediate

---

[30] As for Cleveland's California Labor Code section 1174 claim, the Court need not decide whether a violation of section 1174 can ever support a UCL claim where, as discussed above, a plaintiff has not exhausted the administrative remedies required to enforce that section under PAGA.  Here, even assuming that such a claim would not require administrative exhaustion, Cleveland cannot bring a UCL claim based on a violation of section 1174 because, on the facts of this case, such a violation would not give rise to a remedy authorized by the UCL: Cleveland is not entitled to injunctive relief because, as discussed below, he is no longer employed by Groceryworks, and section 1174's recordkeeping requirements do not create any property interest that would support an award of restitution.  Moreover, even if Cleveland could bring a PAGA claim here, private plaintiffs have no property interest in PAGA civil penalties that would serve as a basis for their recovery as restitution.  *See Amalgamated Transit Union, Local 1756, AFL–CIO*, 46 Cal. 4th 993, 1003 (2009).

[31] Cleveland seeks restitution "for unpaid wages as a result of off-the-clock work and unpaid premiums for missed meal and rest breaks."  Opp'n at 12.  The Court has dismissed Cleveland's UCL claim to the extent it is based on his off-the-clock and rest break claims, because the Court granted Groceryworks's motion for summary judgment as to those claims.  Therefore, the only remaining basis for UCL liability is Cleveland's meal break claim.

United States District Court
Northern District of California

1   threat of repeated injury" from Groceryworks's wage and hour practices.  *See id.* at 985–86;

2   *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 562 (S.D. Cal. 2013).  Cleveland therefore lacks

3   standing to pursue prospective injunctive relief against Groceryworks.  *See Bates*, 511 F.3d at

4   985–86.

5          As to restitution, the UCL permits courts to "make such orders or judgments . . . as may be

6   necessary to restore to any person in interest any money or property, real or personal, which may

7   have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203.  The

8   California Supreme Court has defined an order for such restitution as an order "compelling a UCL

9   defendant to return money obtained through an unfair business practice to those persons in interest

10  from whom the property was taken."  *Korea Supply*, 29 Cal. 4th at 1144–45 (citation and internal

11  quotation marks omitted).  "The object of restitution is to restore the status quo by returning to the

12  plaintiff funds in which he or she has an ownership interest."  *Id.* at 1149; *accord L.A. Taxi Coop.,*

13  *Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015).  In addition, in *Cortez v.*

14  *Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000), the California Supreme Court

15  explained that the plaintiffs in that case could recover their earned overtime wages as restitution

16  because they had a "vested interest" in their earned wages, and "'equity regards that which ought

17  to have been done as done, and thus recognizes equitable conversion.'"  *Cortez*, 23 Cal. 4th at 178

18  (citation omitted).

19         In *Korea Supply*, the California Supreme Court squarely addressed "whether disgorgement

20  of profits that is not restitutionary in nature is an available remedy for an individual private

21  plaintiff under the UCL."  *Korea Supply*, 29 Cal. 4th at 1144.  The plaintiff in *Korea Supply*

22  requested disgorgement of profits from the defendant where the profits at issue were "neither

23  money taken from a plaintiff nor funds in which the plaintiff has an ownership interest," but rather

24  took the form of a lost business opportunity.  *Id.* at 1140.  The court held that, at least in a case

25  involving an individual plaintiff, nonrestitutionary disgorgement is not an available remedy under

26  the UCL.  *Id.* at 1151–52; *see also Feitelberg v. Credit Suisse First Bos. LLC*, 134 Cal. App. 4th

27  997, 1013 (2005) (extending this rule to class actions).  Under the UCL, an individual may recover

28  profits unfairly obtained only to the extent that those profits represent monies given to a defendant

United States District Court
Northern District of California

or benefits in which a plaintiff has an ownership interest.  *Feitelberg*, 134 Cal. App. 4th at 1150;

*see also In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 589760, at *18

(N.D. Cal. 2016); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (2005) (striking the

plaintiff's prayer for restitution where the plaintiff sought "restitution" of the defendants' profits to

which he had not established an ownership interest).

   Groceryworks does not appear to dispute the state of the law, but rather argues that the

restitution Cleveland seeks is in reality "non-restitutionary disgorgement" which he is barred from

recovering as a matter of law.  Mot. at 20–21.  Cleveland, however, does not request such a

remedy.[32]  The California Supreme Court has held payments under section 226.7 are

compensatory wages: "[t]he statute's plain language, the administrative and legislative history,

and the compensatory purpose of the remedy compel the conclusion that the 'additional hour of

pay' is a premium wage intended to compensate employees, not a penalty."  *Murphy v. Kenneth*

*Cole Prods.*, 40 Cal. 4th 1094, 1114 (2007).  When an employer violates its duty to provide an off-

duty meal break, the employee is immediately entitled to the section 226.7 premium as

compensation, in a manner akin to an employee's immediate entitlement to payment of wages or

for overtime.  *Safeway*, 238 Cal. App. 4th at 1149 (citing *Murphy*, 40 Cal. 4th at 1108).  In

*Cortez*, the California Supreme Court held that a court order for payment of wages unlawfully

withheld from an employee is a restitutionary remedy, not one for payment of damages, because

"unlawfully withheld wages are property of the employee within the consideration of the UCL."

*Cortez*, 23 Cal. 4th at 178.  Because *Murphy* determined that an employee's entitlement under

section 226.7 is a wage, and an order to pay wages earned is a restitutionary remedy, the recovery

---

[32] Groceryworks takes issue with the vague language used by Cleveland in his complaint: "[a]s a result of Defendant's unfair business practices, Defendant has reaped unfair benefit and illegal profits at the expense of [Cleveland] . . . .  Defendant should be ordered to restore such monies to [Cleveland] . . . ."  Compl. ¶ 68; Mot. at 20 ("Cleveland is not entitled to confiscate Groceryworks's profits or vaguely pled 'unfair benefits.'").  Cleveland, however, clarified this request in his opposition, specifying that he is seeking "restitution for unpaid wages as a result of off-the-clock work and unpaid premiums for missed meal and rest breaks."  Opp'n at 12.  Groceryworks does not address Cleveland's clarification in its Reply.  *See* Reply at 10.

of section 226.7 missed meal premiums represent restitution that a plaintiff may recover under the UCL. *See Doe v. D.M. Camp & Sons*, No. CIV-F-05-1417-AWI, 2009 WL 921442, at *13 (E.D. Cal. Mar. 31, 2009) (holding that payments under section 226.7 are restitutionary because they are akin to payment of overtime wages to an employee: both are earned wages and thus recoverable under the UCL); *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896 (C.D. Cal. 2005) (same).

The cases that Groceryworks cites do not reach the opposite conclusion. Mot. at 21. The courts in *Madrid* and *Feitelberg* both affirmed that restitution is available only where a plaintiff can establish an ownership interest in the profits it seeks to recover. *Madrid*, 130 Cal. App. 4th at 453; *Feitelberg*, 134 Cal. App. 4th at 1013. In *Madrid*, the plaintiff failed to establish any property interest in the profits he sought to recover. *Madrid*, 130 Cal. App. 4th at 456. In *Feitelberg*, the plaintiff did not dispute that the profits he sought were nonrestitutionary, but instead argued—unsuccessfully—that the UCL permits this type of recovery in class actions. *Feitelberg*, 134 Cal. App. 4th at 1006. Unlike in *Madrid* and *Feitelberg*, Cleveland has set forth facts that would enable a reasonable jury to find that he may have missed a conforming meal break. Should a jury determine that Cleveland was denied a proper meal break, he will have established a property interest in any 226.7 premiums he earned immediately upon missing such a meal break. Cleveland may therefore proceed on his UCL claim for restitution based on missed meal break premiums.

Accordingly, Groceryworks's motion for summary judgment as to Cleveland's UCL claim on this basis is DENIED. Further, Cleveland may be able to proceed on his UCL claim to the extent it is based on his ERISA claims, which Groceryworks has not challenged in its present motion.

**E.   Punitive Damages Under the California Labor Code and the California Unfair Competition Law**

Cleveland seeks punitive damages for all claims "where allowed by law." Compl. at 5. Groceryworks is correct that punitive damages are unavailable to Cleveland under both the California Labor Code and the UCL. Mot. at 22. In California, punitive damages for statutory

50

obligations are constrained by the "new right-exclusive remedy doctrine": where a statute creates new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate. *Brewer v. Premier Golf Props.*, 168 Cal. App. 4th 1243, 1252 (2008). Applying this principle to the Labor Code, California courts have held that punitive damages are unavailable for Labor Code violations. *Id.*; *accord Trahan v. U.S. Bank Nat'l Ass'n*, 2009 WL 4510140, *4 (N.D. Cal. Nov. 30, 2009). As to the UCL, "[w]hile the scope of conduct covered by the UCL is broad, its remedies are limited [and] '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620–21 (N.D. Cal. 2007) (quoting *Korea Supply*, 29 Cal. 4th at 1148) (striking prayer for punitive damages under the Labor Code and the UCL). Accordingly, Groceryworks's motion for summary judgment on Cleveland's prayer for punitive damages for alleged violations of the California Labor Code (Causes of Action 1–5) and the California Unfair Competition Law (Cause of Action 6) is GRANTED.

## IV.    CONCLUSION

For the reasons stated above, the Partial Motion for Summary Judgment is DENIED as to Cleveland's meal break claim (Claim 2) and his derivative UCL claim (Claim 6), and GRANTED as to the remaining claims at issue (Claims 1, 3, 4, and 5). Groceryworks did not seek summary judgment as to Cleveland's ERISA claims (Claims 7 and 8), which are not affected by this Order.

**IT IS SO ORDERED.**

Dated: August 4, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge

51